In the Supreme Court of Georgia

Decided:   November 16, 2015

S15A1189.  POST v. THE STATE.
S15A1190.  FRIPP v. THE STATE.
S15A1193.  BROWN v. THE STATE.

NAHMIAS, Justice.

Appellants Desmond Post, Rolaunda Fripp, and Joseph Brown were indicted along with Darchelle Arnold and Jarvis Butts for numerous crimes including felony murder in connection with an armed robbery on December 9, 2009, that led to the shooting deaths of Mark Jones and Christopher Jackson.[1] On October 6, 2010, the Governor appointed Reuben M. Green, who was campaigning for election to the Cobb County State Court, to fill a vacancy on the Cobb County Superior Court, and Appellants' cases were assigned to Judge Green. On April 18, 2011, two months before the scheduled trial date, Post filed a motion for recusal on the grounds that Judge Green was employed by the Cobb

---

[1] Appellants' co-indictee Arnold pled guilty and testified for the State at Appellants' trial, and the trial court's denial of her motion to withdraw her guilty pleas was affirmed by this Court in Arnold v. State, 292 Ga. 95 (734 SE2d 382) (2012). Butts was tried along with Appellants, and we recently affirmed his convictions for felony murder and other crimes in Butts v. State, Case No. S15A1192, decided Oct. 5, 2015. The crimes are described in detail in our opinion in Butts. See id., slip op. at 2-7.

County District Attorney's Office when Post's case was being handled by that office and that the Cobb County District Attorney, Patrick H. Head, was serving as the treasurer for "Judge Green's election campaign." At the final motions hearing six weeks later, Judge Green engaged the parties in a lengthy discussion about his possible recusal before orally denying Post's motion. After the hearing, Fripp and Brown filed motions for recusal on the ground that Judge Green had created an appearance of impropriety by defending himself against the recusal allegations. On September 2, 2011, Judge Green entered detailed orders denying Appellants' recusal motions, and the judge also denied their requests for a certificate of immediate review. Appellants proceeded to trial in March 2012, where the jury found them guilty of all charges except malice murder, and their motions for new trial were denied in November 2014. They now appeal, enumerating as error, among other things, the recusal issues.[2]

---

[2] Arnold and Butts did not file any recusal motions in the trial court or raise any recusal issues on appeal. See Arnold, 292 Ga. at 95 (describing Arnold's claims of error); Butts, slip op. at 1 (describing Butts's claims of error). See also State v. Hargis, 294 Ga. 818, 822-823 (756 SE2d 529) (2014) ("Even after [the defendant] learned of the grounds for the potential disqualification of the trial judge, he apparently decided to take his chances with the same judge . . . . That was his choice to make, but he could not do so and still preserve the disqualification issue for review in the appellate courts. To hold otherwise would be to sanction gamesmanship. . . . The idea that a party could allow a judge whom the party believes to be disqualified to continue to preside over the case without objection, only later to urge the disqualification, is inconsistent with the principles of fair play and judicial economy that are embodied in the requirement that a motion to recuse be filed

As explained below, we agree with Appellants that Judge Green erred in failing to refer their recusal motions for reassignment to another judge to decide. Moreover, based on the transcript of the final motions hearing, the accuracy of which is not disputed, we further conclude that, upon reassignment to another judge, Fripp's and Brown's recusal motions would have to be granted. Accordingly, we vacate the order denying Post's recusal motion, we reverse the orders denying Fripp's and Brown's recusal motions, we therefore vacate Appellants' convictions, and we remand these cases with direction.

1. We first review the basic procedural and substantive rules governing motions to recuse superior court judges in Georgia.[3] Rule 25.3 of the Uniform Superior Court Rules explains that when the trial judge assigned to a case is presented with a recusal motion and an accompanying affidavit, "the judge shall temporarily cease to act upon the merits of the matter" and determine "immediately": (1) whether the motion is timely; (2) whether the affidavit is legally sufficient; and (3) whether the affidavit sets forth facts that, if proved,

promptly." (citations omitted)).

[3] We note that the terms "recuse" or "recusal" and "disqualify" or "disqualification" are used interchangeably in this context.

3

would warrant the assigned judge's recusal from the case. See <u>Horn v. Shepherd</u>, 294 Ga. 468, 471 (754 SE2d 367) (2014); <u>Birt v. State</u>, 256 Ga. 483, 484 (350 SE2d 241) (1986). If all three criteria are met, "another judge shall be assigned to hear the motion to recuse." USCR 25.3. The decision about referring a recusal motion for reassignment to another judge does not involve an exercise of discretion by the judge whose recusal is sought. See <u>Mayor of Savannah v. Batson-Cook Co.</u>, 291 Ga. 114, 119 (728 SE2d 189) (2012). Rather, whether the three threshold criteria have been met is a question of law, which an appellate court reviews de novo. See id.

To be timely, a recusal motion and accompanying affidavit must be filed and presented to the judge "not later than five (5) days after the affiant first learned of the alleged grounds" for the judge's recusal "and not later than ten (10) days prior to the hearing or trial which is the subject of [the] recusal." USCR 25.1. Failure to meet these deadlines may be excused, but only if the motion and affidavit establish "good cause" for the delay, and "[i]n no event shall the motion be allowed to delay the trial or proceeding." Id. To be legally sufficient, an affidavit accompanying a recusal motion must contain "the three elements essential to a complete affidavit: '(a) a written oath embodying the

4

facts as sworn by the affiant; (b) the signature of the affiant; and (c) the attestation by an officer authorized to administer the oath that the affidavit was actually sworn by the affiant before the officer.'" Batson-Cook Co., 291 Ga. at 120 (citation omitted). The affidavit or affidavits accompanying the recusal motion must "fully assert the facts upon which the motion is founded" and present "all evidence" on the motion. USCR 25.1.

Allegations consisting of "bare conclusions and opinions" that the assigned judge is biased or prejudiced for or against a party, USCR 25.2, "are not legally sufficient to support a recusal motion or to justify forwarding the motion for decision by another judge." Horn, 294 Ga. at 472. In all other respects, however, the assigned judge must take the motion at face value, treating it as though "all of the facts set forth in the affidavit are true." USCR 25.3. See Batson-Cook Co., 291 Ga. at 120-121 ("The rationale for requiring the judge to take as true the affidavit's facts even when the judge knows the facts are not true 'is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the [rule] is directed.' Berger v. United States, 255 U.S. 22, 36 (41 SCt 230, 65 LE 481) (1921)."). In deciding whether this assumed state of facts would authorize an order

5

requiring recusal, the assigned judge is to be guided by Canon 3E of the current Georgia Code of Judicial Conduct.[4]

Current Canon 3E (1) – Rule 2.11 (A) in the revised Code – says generally that "[j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned," followed by a non-exclusive list of specific situations in which recusal is required. The standard is an objective one. The facts "must be considered from the perspective of a reasonable person rather than from the perception of interested parties or their lawyer-advocates, or from the subjective perspective of the judge whose continued presence in the case is at issue." Batson-Cook Co., 291 Ga. at 121 (citation omitted). The operative question is whether "a fair-minded and impartial person would have a reasonable perception of a judge's lack of impartiality based upon objective facts set forth in the affidavit or reasonable inferences therefrom." Id.

If the motion and affidavit, taken at face value, satisfy the three threshold criteria, the assigned judge must refer the motion for reassignment and may not

---

[4] A substantially revised Georgia Code of Judicial Conduct, which can be found at www.gajqc.com, will take effect on January 1, 2016. Among other things, the Georgia Code has been reorganized to correspond to the format of the ABA Model Code of Judicial Conduct, which has been adopted by most other states. The current Code applies to these cases, but we will also reference the corresponding provisions of the revised Code.

"oppose the motion." USCR 25.3. The judge whose recusal is sought may not respond to the motion or attempt to refute the allegations, which "stand denied automatically," id., no matter how false or even defamatory the judge might know or perceive the allegations to be. See Isaacs v. State, 257 Ga. 126, 128 (355 SE2d 644) (1987) (recognizing that judges have an interest in protecting their reputations and that "judges may be sorely tempted to respond to motions to recuse which they perceive as gratuitously defamatory," but concluding that "these factors are heavily outweighed by the necessity of preserving the public's confidence in the judicial system"); Horn, 294 Ga. at 473 (noting that "there are . . . remedies for frivolous or vexatious recusal litigation," including a possible award of attorney fees and litigation costs under OCGA § 9-15-14). See also USCR 25.7 (authorizing voluntary recusal on the judge's own motion or on the motion of a party, which "shall not be construed as either an admission or denial to any allegations which have been set out in the motion").

If the recusal motion satisfies the test for referral to another judge, the judge whose recusal is sought "shall neither select nor participate in the selection of the judge to hear the motion." USCR 25.5. In a judicial circuit with three or more superior court judges like the Cobb Judicial Circuit, see OCGA

7

§ 15-6-2 (11), a judge must be assigned to hear and decide the motion using the circuit's "existing random, impartial case assignment method," USCR 25.4 (c).[5] That judge may decide the motion solely on the affidavits, but also has discretion to convene an evidentiary hearing. See USCR 25.6. Either way, after considering the evidence, the judge must rule on the merits of the motion and "make written findings and conclusions." Id. If the motion is denied, the original judge will continue to preside over the case. If the motion is granted, the judge originally assigned to the case is recused, and another judge must then be selected to preside over the case following the same procedure that was used to select the judge who decided the recusal motion. See id. The decision of the judge assigned to hear the recusal motion – the ruling on the merits of the motion, based on findings about which allegations are in fact true and what inferences should in fact be made – is reviewed on appeal only for abuse of discretion. See Batson-Cook Co., 291 Ga. at 119.

   With these rules in mind, we now consider the motions filed by Appellants

---

[5] If the circuit does not have random, impartial case assignment rules, "[t]he chief judge of the circuit shall select a judge within the circuit to hear the motion." USCR 25.4 (C) (1). Further provision is made for situations where the chief judge is the judge whose recusal is sought and where the recusal motion pertains to all active judges in the circuit. See USCR 25.4 (C) (2) - (3).

to recuse Judge Green.

*S15A1189. Post v. State.*

2.     Post contends that Judge Green erred in finding that he failed to satisfy the three threshold criteria that trigger the requirement to refer a recusal motion for reassignment to another judge.  We agree.

(a)     Post filed his recusal motion on April 18, 2011.[6]  The motion said, "This action to recuse is being brought within five days of discovery of recusal grounds by defense counsel."  Post did not file a separate affidavit, but at the end of the motion, under the heading "AFFIDAVIT," his counsel signed a notarized statement under oath verifying that "the facts alleged in the above and foregoing Motion to Recuse are true and correct."  The motion said that Judge Green was employed by the Cobb County District Attorney's Office from the inception of Post's case until the time that Judge Green was sworn in as a judge.

The motion also said that Judge Green's campaign committee submitted a disclosure form to the Georgia Government Transparency and Campaign

---

[6] Post filed and purported to join other recusal motions after the final motions hearing, but he does not enumerate the denial of those motions as error on appeal, and we therefore do not address them.  See Hargis, 294 Ga. at 822-823.

9

Finance Commission in 2010 that listed the address of the Cobb County District Attorney's Office as the address for "Judge Green's election campaign" and the treasurer as "Patrick H. Head," the Cobb County District Attorney, referring to the attached printout of a page from the Commission's website titled "Campaign Reports and Registration Information" and the certification of the printout by the Commission's executive secretary, both of which were dated April 13, 2011. The "Candidate Name" on the printout was "Green, Reuben M."; the "Office Sought" was "Judge Superior Court" with "Circuit: Cobb" underneath; the "Status" was "Active"; and "Reuben Green for State Court Judge" was listed under "Committee Information." Judge Green's wife was listed under "Chairperson Information," followed by a residential address, and "Patrick H. Head" was listed under "Treasurer Information," followed by a street address that the motion alleged was that of the District Attorney's Office. The "Filer" listed on the certification was "Reuben M. Green," and the "Office Sought" was "Judge Superior Court / Circuit: Cobb." The motion argued:

> Clear inferences drawn from the Court's campaign disclosure . . . are that the D.A.'s Office is intimately involved in the judge's campaign[;] that campaign money for Judge Green should be delivered to the D.A.'s Office's address; and that the trial judge's campaign finances are managed by, and at, the D.A.'s Office.

10

Financial decisions as to the judge's campaign, *and therefore his career*, are, at least in part, under the control of the Cobb County District Attorney.

(Emphasis in original.)

(b)    Judge Green found that this recusal motion was untimely because it did not state the date that Post's counsel first learned of the alleged grounds for recusal.  However, the motion was filed on April 18, 2011; Post's counsel verified that the motion was filed "within five days of discovery of recusal grounds by defense counsel"; and the documents attached to the motion were dated April 13, 2011.  Thus, nothing in the motion or its attachments showed that the grounds were discovered prior to April 13.  Taken at face value, the motion was timely under USCR 25.1, and Judge Green therefore erred in finding it untimely.[7]

---

[7] The order denying Post's recusal motion says that Judge Green relied on the statement by Post's counsel at the final motions hearing on May 31, 2011, that he "had to spend time dealing with [the Commission's executive secretary], sending her subpoenas, going back and forth with her," to conclude that Post or his counsel learned of the alleged grounds for recusal prior to April 13.  But such a finding goes beyond the contents of the motion and affidavit taken as true and thus could not be relied on in determining if the motion met the criteria for referral to another judge.  Cf. Berger, 255 U.S. at 36 (explaining that materials outside the motion and affidavit may not be considered by the judge presented with a motion seeking his recusal).  See also id. at 40 (Day, J., dissenting) ("As I understand the opinion of the court, notwithstanding the admissions of counsel, and the sworn stenographic report of what took place, the affidavit must be accepted . . . .").

The order also criticized Post for not requesting a hearing when he filed his motion on April 18 and instead waiting until the final motions hearing six weeks later "to have the motion heard, along with all of the other motions filed in this multi-defendant case, just thirteen (13) days before

11

(c) Judge Green also found that Post's motion was not supported by a legally sufficient affidavit. As correctly said in the order denying the motion, "The Uniform Superior Court Rules could not be clearer in their requirement that the motion be accompanied by an affidavit." Thus, it is certainly the better practice for a party submitting a recusal motion to file along with the motion one or more separate affidavits stating the specific facts on which the motion is based and showing clearly that the three threshold criteria have been met. Nevertheless, substance prevails over nomenclature, and this Court has previously held that "a sworn verification that the facts contained in the foregoing [recusal] motion are true and correct to the best of the movant-affiant's knowledge and belief" substantially complies with the accompanying affidavit requirement of USCR 25.1. Birt, 256 Ga. at 484-485. Post's motion,

a trial that was specially set seven (7) months earlier." But the Uniform Superior Court Rules do not contemplate a hearing on a recusal motion by the judge whose recusal is sought. See USCR 25.3 (requiring a judge presented with a motion seeking his recusal to "temporarily cease to act upon the merits of the matter and . . . immediately determine" whether the three threshold criteria for referring the motion for reassignment have been met); Henderson v. State, 295 Ga. 333, 334 (759 SE2d 827) (2014) (holding that the rules "only contemplate an evidentiary hearing if it is determined that the motion satisfies the three threshold requirements and the recusal motion is assigned to another judge"). See also USCR 25.5 (limiting the role of the judge whose recusal is sought "[i]n the instance of any hearing on a motion to recuse" held by the judge assigned to decide the motion). Moreover, Post filed his motion almost two months before the scheduled trial date and six weeks before the final motions hearing. See USCR 25.1 (requiring a recusal motion to be filed "not later than ten (10) days prior to the hearing or trial which is the subject of recusal" unless good cause is shown for filing it later).

12

with the sworn verification by his counsel, contained "the three elements essential to a complete affidavit: '(a) a written oath embodying the facts as sworn by the affiant; (b) the signature of the affiant; and (c) the attestation by an officer authorized to administer the oath that the affidavit was actually sworn by the affiant before the officer.'" Batson-Cook Co., 291 Ga. at 120. Accordingly, Judge Green erred in finding that Post did not satisfy the accompanying affidavit requirement.

(d) Finally, Judge Green concluded that the facts alleged, if proved true, would not support an order requiring his recusal. We again disagree.

Judge Green properly rejected the first alleged ground for recusal – his prior employment by the Cobb County District Attorney's Office when the office was handling Post's case – based on this Court's then-recent decision in Gude v. State, 289 Ga. 46 (709 SE2d 206) (2011), because Post did not allege that Judge Green, "while still a prosecutor, was personally involved in some aspect of the criminal matter or served in a supervisory role over another lawyer while that lawyer was personally involved in some aspect of the criminal matter." Id. at 49. As Gude made clear, an allegation by a criminal defendant

that the assigned judge was previously employed by the prosecuting attorney's office at a time when the defendant's case was being prosecuted is, without more, legally insufficient to require the judge to refer the motion for reassignment. See id. at 47-49.

Post's second alleged ground for recusal presents a more difficult question. Georgia has judicial elections, elections mean campaigns, and to be successful, campaigns require support, financial and otherwise. As a practical matter, "most donors [in judicial campaigns] are lawyers and litigants who may appear before the judge they are supporting." Williams-Yulee v. Florida Bar, 575 U.S. ___, ___ (135 SCt 1656, 1667, 191 LE2d 570) (2015). Allegations that a party or a party's attorney made unexceptional campaign contributions or provided commonplace forms of non-monetary support during a judge's election campaign ordinarily are insufficient to require referring a recusal motion for reassignment to another judge. See Gude, 289 Ga. at 50 (holding that an allegation that the district attorney whose office was prosecuting the defendant "gave financial and/or other support to the campaign to elect" the judge was legally insufficient to require the judge to refer the recusal motion for reassignment); Patterson v. Butler, 187 Ga. App. 740, 740-741 (371 SE2d 268)

14

(1988) (same for an allegation in a civil case that one of the defendants had worked in the judge's political campaigns before the judge took the bench). See also <u>Zaias v. Kaye</u>, 643 S2d 687, 687 (Fla. Dist. Ct. App. 1994) ("The fact that an attorney made a campaign contribution or served [as one of over 60 members of a judge's re-election campaign committee] does not, without more, require disqualification.").

Indeed, as the United States Supreme Court recognized in <u>Williams-Yulee</u>:

> A rule requiring judges to recuse themselves from every case in which a lawyer or litigant made a campaign contribution would disable many jurisdictions. . . . Moreover, [such a rule] could create a perverse incentive for litigants to make campaign contributions to judges solely as a means to trigger their later recusal – a form of peremptory strike against a judge that would enable transparent forum shopping.

135 SCt at 1671-1672. See also Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges § 9:5, at 249 (2d ed. 2007) ("Generally, the mere fact that a party or attorney participated in a judge's election campaign does not, in and of itself, present a legally sufficient ground for disqualification

15

when that party or lawyer later appears in a proceeding before the judge.").[8]

Post's recusal motion, however, alleged more than ordinary campaign contributions and non-monetary support from a party's attorney. Post alleged that Patrick Head, the district attorney whose office was prosecuting him, was serving as the treasurer for "Judge Green's election campaign," and Post supported that allegation with documents which indicated on their face that as

_____

[8] On September 8, 2011, shortly after Judge Green entered the order denying Post's recusal motion, a new provision governing disqualification based on campaign contributions or support was added to the Georgia Code of Judicial Conduct. The current Canon 3E (1) (d) says:

> Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has received or benefited from an aggregate amount of campaign contributions or support so as to create a reasonable question as to the judge's impartiality. When determining impartiality with respect to campaign contributions or support, the following may be considered: (i) amount of the contribution or support; (ii) timing of the contribution or support; (iii) relationship of contributor or supporter to the parties; (iv) impact of contribution or support; (v) nature of contributor's prior political activities or support and prior relationship with the judge; (vi) nature of case pending and its importance to the parties or counsel; (vii) contributions made independently in support of the judge over and above the maximum allowable contribution which may be contributed to the candidate; and (viii) any factor relevant to the issue of campaign contributions or support that causes the judge's impartiality to be questioned.

There is also commentary elaborating on this provision, and several of the terms used in the canon, including "contribution" and "support," are defined in the Terminology section of the Code. As the commentary explains, recusal based on campaign contributions is mandated only if "(a) a judicial candidate has knowledge of a contribution made to the candidate or the candidate's campaign committee that exceeds the maximum allowable contribution permitted by law and, (b) after having such knowledge, the violation is not corrected in a timely manner (i.e., usually accomplished by returning the contribution)." The legal limits on contributions to judicial (and other) election campaigns are set forth in OCGA § 21-5-41. The same provisions appear with similar language in the revised Code as Rule 2.11 (A) (4), comments [8] - [11], and in the Terminology section.

16

of five days before the motion was filed, the district attorney, using the address of the district attorney's office, was serving as the treasurer of Judge Green's active campaign for the Superior Court, not the State Court seat the judge was seeking when he was appointed.

Head's status as the judge's current campaign treasurer raised at least an inference of a relationship with the judge different from and more significant than that of general supporters and contributors. Under Georgia law, each election campaign committee is required to have a chairperson and a treasurer, whose names and addresses must be filed with the Government Transparency and Campaign Finance Commission. See OCGA § 21-5-30 (b).[9] If there is a vacancy in either position, the committee is barred from accepting campaign contributions. See id. The treasurer of a campaign committee is required to "keep detailed accounts, current within not more than five business days . . . , of all contributions received and all expenditures made by or on behalf of the candidate or committee" as well as "detailed accounts of all deposits and of all withdrawals made to the separate campaign depository and of all interest earned

---

[9] The same person may serve as both chairperson and treasurer, and that person may be the candidate himself. See OCGA § 21-5-30 (b).

17

on any such deposits," unless the candidate performs those tasks himself. OCGA § 21-5-32 (a). These accounts are subject to inspection by the Commission. See OCGA § 21-5-32 (b). Campaign contribution disclosure reports, which are required to list and provide detailed identifying information about each campaign contribution or expenditure of more than $100, must be filed regularly by the candidate himself or by the chairperson or treasurer of his campaign committee. See OCGA § 21-5-34 (a) (1) (A), (3), (b) (1) (A) - (F). These financial reporting requirements continue after the election, even if the candidate loses the election or leaves office; reports must be filed until all contributions have been properly expended. See OCGA § 21-5-34 (a) (2) (B), (3), (*i*) (1) - (2). Indeed, it is not unusual for the financial components of a campaign to continue well after the election components of the campaign have ended, as the campaign pays off debts (which may require additional fundraising), refunds or otherwise expends contributions, or organizes for the next election.

In light of these statutory provisions, it is a reasonable inference that a person selected to serve as the treasurer of a judge's existing campaign committee is playing a significant role in managing the financial activities of the

18

judge's campaign, and the financing of a campaign may be critical to its success in keeping the judge in office. If the campaign treasurer is a party or the lawyer for a party in a case pending before the judge, this inference, if not rebutted by other information presented with a recusal motion and also assumed to be true, is enough to require referring the motion for reassignment to another judge so that the relevant facts may actually be determined. See Neiman-Marcus Group, Inc. v. Robinson, 829 S2d 967, 968 (Fla. Dist. Ct. App. 2002) ("We hold that where a judge selects an attorney to serve in the special role of campaign treasurer in an election campaign, and the campaign is not remote in time from the date the relationship is revealed to the opposing party, disqualification is warranted."). See also Massongill v. County of Scott, 991 SW2d 105, 109 (Ark. 1999) (noting "the potential for the appearance of impropriety in the relationship between the trial judge and appellees' counsel," who "served as the judge's campaign treasurer in an election campaign," but not requiring recusal under Arkansas law in the absence of a showing of bias or prejudice); Flamm, supra, § 9:5, at 251 & nn.16-19 (collecting cases suggesting that recusal may be required where a party or attorney is serving or has served in a select leadership role in a judge's ongoing or recent election campaign).

When the fact-finder – the judge to whom the recusal motion is reassigned – determines what relevant facts are actually true and properly established, and what inferences from those facts should actually be made, it may turn out that the treasurer plays no especially important role in an ongoing or recent campaign. It could be that the designation as treasurer was entirely honorary or otherwise nominal and the tasks that could be performed by the treasurer are in fact all performed by the candidate, the campaign chairperson, or campaign employees or contractors; that the campaign has been defunct for a significant period; or that other facts exist which, once made known to the fact-finder (and the public), would dissipate the appearance of partiality that might otherwise exist. On the other hand, it may turn out that, other than the candidate judge, the most important person in a particular campaign is the treasurer.[10]

_____

[10] Depending on the role of a treasurer in a particular judicial election campaign, which is something that the judge should know, the judge may be advised to disclose the treasurer's involvement in any pending cases to the parties along with any additional relevant facts regarding the treasurer's actual role in the campaign. The commentary to current Canon 3E (1) says, "Judges should disclose on the record information that the court believes the parties or their lawyers might consider relevant to the question of disqualification, even if they believe there is no legal basis for disqualification." We note that shortly after Judge Green denied Post's recusal motion, this commentary was amended to add, "The public filing of a 'campaign contribution disclosure report' or 'financial disclosure statement' [as defined by OCGA § 21-5-3] shall be deemed a disclosure to all parties of the information contained therein." (The same language about disclosure and about publicly filed reports appears in comment [2] to Rule 2.11 of the revised Code of Judicial Conduct.) Moreover, some bases for recusal, once disclosed, may be waived by the parties. Current Canon 3 (F) (Rule 2.11 (C) in the revised Code), entitled "Remittal of Disqualification," says:

In this case, there are a number of undeveloped but potentially material facts bearing on the recusal question that need to be determined, possibly by taking evidence. See USCR 25.6 (authorizing a judge assigned to consider a recusal motion involving another judge to "convene an evidentiary hearing"). In particular, it appears that questions remain regarding Judge Green's campaign committee or committees, what judicial offices they were for and whether and when their activities were terminated, and the scope and nature of Head's functions as treasurer.[11]

Post's motion to recuse Judge Green alleged that the district attorney whose office was prosecuting him was serving as treasurer for the judge's

---

Judges disqualified by the terms of [Canon] 3E may disclose on the record the basis of their disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

[11] For example, the order denying Post's recusal motion states that the Campaign Finance Commission document he attached "indicates that Patrick H. Head, current Cobb County District Attorney, served as campaign treasurer for this Court's campaign for a seat on the State Court of Cobb County, which terminated upon its appointment to the current seat on the Superior Court of Cobb County." But that document does not indicate on its face that Head served only on a State Court campaign and does not indicate that any campaign had terminated. Those may be the actual facts, but that must be determined by a new judge.

21

election campaign. We hold that, taking that allegation as true and in the absence of additional information about the campaign or Head's involvement in it (which USCR 25.1 required Post to include in the affidavit if such information was known to him), the motion presented a ground sufficient to potentially authorize an order requiring Judge Green's recusal.[12]

(e)    To summarize, taken at face value, Post's April 18, 2011 recusal motion was timely, he substantially complied with the accompanying affidavit requirement, and the motion included an allegation – that the district attorney prosecuting him was serving as treasurer for the trial judge's election campaign – that was potentially sufficient to warrant the judge's recusal. Accordingly, Judge Green was required to refer the motion for reassignment to

_____

[12] We note that Post filed what he called an "amended affidavit" on May 20, 2011, reporting on discussions he had with the executive secretary of the Campaign Finance Commission and attaching additional documents regarding Judge Green's campaign and the district attorney's role in it. But the rules make no provision for such an amendment, stating instead that the affidavit accompanying the recusal motion must present "all evidence thereon" and "fully assert the facts upon which the motion is founded." USCR 25.1. If new information relevant to recusal becomes known to a party, a new recusal motion should be filed within five days (absent a showing of good cause for delay). Post did not file a new motion with his "amended affidavit" (and he did not explain why the information in that affidavit had not been included in his original April 18 motion and affidavit). Post also filed an "amendment" to his April 18 recusal motion and affidavit on June 2, 2011, attaching a newspaper article from April 12 regarding Judge Green's work as an assistant district attorney, but even construed as a new recusal motion, it would be untimely. The June 2 document does not state that Post learned of the six-week-old article in the preceding five days; to the contrary, it states that his counsel read the article in the online edition of the newspaper on April 13.

22

another judge who could then decide the recusal motion on its merits, after an evidentiary hearing or other development of the record, based on facts found to be true as opposed to facts merely assumed to be true. We therefore vacate Post's convictions and Judge Green's order denying his recusal motion, and we remand this case to the trial court to be referred for the assignment of a judge other than Judge Green to decide the recusal motion.

If the judge assigned to decide the recusal motion denies it, then Judge Green will continue to preside over the case, the judgments of conviction against Post should be re-entered, and he may file a new appeal enumerating the denial of the recusal motion as error along with the enumerations of trial error that he raised in this appeal. See Parker v. State, 296 Ga. 586, 596-597 (769 SE2d 329) (2015); Moore v. State, 290 Ga. 805, 809-810 (725 SE2d 290) (2012). If the recusal motion is granted, however, Post's case must be reassigned, all proceedings and orders after the filing of the motion would be void as to Post, and his case would start over from that point before the new judge assigned to the case. See Propst v. Morgan, 288 Ga. 862, 864 (708 SE2d 291) (2011) ("[I]f a party files a motion to recuse a trial judge and the motion is denied, but it is later determined that the judge should have been disqualified to act in the case,

23

all proceedings after the filing of the motion to recuse are 'invalid and of no effect.'" (citation omitted)).

### S15A1190.  Fripp v. State.
### S15A1193.  Brown v. State.

3.      Fripp and Brown contend that Judge Green erred in denying their recusal motions based on Judge Green's statements at the final motions hearing on May 31, 2011.  Judge Green correctly found that these motions were timely and accompanied by legally sufficient affidavits.[13]  Thus, the only issue is whether Judge Green erred in ruling that the affidavits' factual allegations, if proved, would not support an order requiring his recusal.  Based on the hearing transcript, the accuracy of which is not disputed, we conclude that Judge Green was required to refer the motions for reassignment, and that the judge who should have heard the motions would have had no choice but to grant them. Accordingly, a remand for the motions to be heard by a new judge is

---

[13]  At the final motions hearing, Judge Green granted Fripp's and Brown's requests that a transcript of the hearing be prepared on an expedited basis and that they be given leave to file their recusal motions beyond the normal five-day deadline to enable them to use the transcript.  See USCR 25.1 (allowing exceptions to the five-day deadline for good cause shown).  On June 3, 2011, the court reporter certified a transcript of the portion of the hearing related to recusal.  On June 6, Brown filed his motion for recusal based on, among other things, what occurred at the hearing, along with an accompanying affidavit from his counsel, attaching a copy of the transcript.  On June 7, Fripp filed a motion adopting Brown's recusal motion and her own similar motion for recusal with an accompanying affidavit from her counsel.

unnecessary, and the orders denying Fripp's and Brown's recusal motions are reversed.

(a) Near the outset of the final motions hearing, Judge Green said, "I think probably it makes most sense to do the recusal motion first," and he then engaged the parties in a lengthy discussion about his possible recusal, during which Fripp and Brown announced that they were joining in the recusal motion that Post had filed on April 18 (as discussed in Division 2 above).[14] In response to the State's argument that Post's motion was untimely, Post argued through his counsel, Bert W. Cohen, that even if he raised the recusal issue in the wrong way, Judge Green had "an affirmative duty to disclose these matters to the litigants and to the parties immediately and let us know about this." Judge Green then said:

> All right. . . . I do not believe there would be any reason why my impartiality might reasonably be questioned in this case.

---

[14] As Fripp acknowledges in her brief to this Court, an oral joinder in another party's recusal motion may not be effective, given the requirements of USCR 25.1. See Henry v. State, 265 Ga. 732, 739 (462 SE2d 737) (1995) (affirming the denial of an oral motion to recuse on the ground that it failed to comply with USCR 25.1's requirements that "all motions for recusal be filed in writing and be accompanied by an affidavit asserting the facts upon which the motion is founded"). Because Fripp and Brown properly filed their own recusal motions based on the final motions hearing, and we hold that Judge Green's recusal was required as a result of those motions on the ground of the judge's statements at the hearing, we need not decide any other recusal matters raised by Fripp or Brown in the trial court or on appeal.

25

However, let me perfect the record, since Mr. Cohen says it's my duty to do this, and the case law does support what he's saying.

I was an A.D.A. [Assistant District Attorney] in the Cobb Judicial Circuit at the time this crime was allegedly committed. Actually, I was a Special Assistant United States Attorney and a Special Assistant District Attorney. I had actually left the employment as far as working in the D.A.'s office in September of 2008, and went to the U.S. Attorney's office w[h]ere I worked full-time from that point forth, although I was paid by federal grant from the Federal Government to the county, and therefore remained a county employee still, and also a Special Assistant District Attorney still, although I didn't handle any local cases here.

At no time when I was in the Cobb D.A.'s office or the U.S. Attorney's office did I participate in the prosecution of this case or learn anything related to this case beyond what was reported in the media and what I've heard in this proceeding, and also in the plea of the codefendant.

On October 6, 2010, Governor Perdue appointed me to the Superior Court bench here in Cobb, and I assumed the case load of Judge Nix. I think I even assumed this case, if I recall correctly. Or it happened after I came on as far as it being presented to come to court.

I don't have any special relationship with the District Attorney. He didn't get me this job. It was the governor that appointed me to this job. I did not represent the State in any aspect of this case, and I have no extra[-]judicial knowledge of the case.

Mr. Cohen has known me for years, as well as each of the other defense lawyers have as well. In fact, I was trial partner to one of them at one point in the past.

26

Mr. Cohen raises in his motion, and I'll assume for purposes of this motion that all the facts that he's listed are correct. He raises the issue of my State Court campaign. And as the State Ethics Commission did, he confuses my State Court campaign with the Superior Court campaign. Pat Head was my treasurer when I ran for State Court last year. That race lasted a couple of months, and then it became an appointable position. At that time, I filed a closure of that with the county because it's a county judgeship. But evidently I was in error and so the State Ethics folks tell me I should have filed it down there as well. But in that disclosure form, I listed Pat Head as my treasurer and Pat Head's office address. The reason why I did that -- not that it really matters for purposes of this motion, but for purposes of the record it might -- is because as a public official, we receive threats all the time. In fact, the reason why I amended the other one, the report of the campaign, the RC-Form that is cited here and included in the motion is because I received death threats at my house. And that's why I amended it recently. Not because my campaign is open, not because there's any funds left in the campaign account; they've all been returned.

At this point, Cohen objected that Judge Green should not be arguing against his affidavit, was not under oath, and could not be cross-examined. Cohen claimed that the Campaign Finance Commission's executive secretary said that Judge Green's State Court campaign was still open and had not been closed, and that according to a newspaper article, District Attorney Head was still holding money for the campaign. Judge Green responded, "Obviously, based on the affidavit and the documents that are attached to it, if I assume that I was running for State Court, obviously I couldn't be running for Superior

27

Court," to which Post replied, "But Mr. Head still holds your money, and you cannot spend it on --." Judge Green interjected, "He does not hold my money. That's not an accurate statement. That's not true. Just because it's printed in the newspaper --." Fripp and Brown then objected that Judge Green was improperly defending himself against the recusal motion and indicated that they planned to file recusal motions based on Judge Green's actions at the hearing. After these exchanges, Judge Green orally denied Post's recusal motion.

(b)     As we have explained in previous cases and have reiterated above, a judge considering a motion seeking his recusal must evaluate the motion and accompanying affidavit solely on their face and assume that the facts set forth in the affidavit are true, even if the judge knows them to be false or incomplete; consideration of additional evidence is inappropriate at this point in the process. See Henderson, 295 Ga. at 334 (explaining that the Uniform Superior Court Rules do not contemplate an evidentiary hearing by the judge whose recusal is sought). It is not error per se to have oral argument on a recusal motion, although in many instances scheduling oral argument would conflict with Rule 25.3's requirement that the judge presented with a recusal motion and affidavit determine "immediately" if the three threshold

28

requirements have been met. The risks of such a hearing are demonstrated by this case. Oral argument may draw the judge into presenting his side of the story, which in turn may create a perception that the judge is an advocate or hostile witness rather than an impartial adjudicator in the case. Oral argument also may result in discussion and consideration of facts beyond those set forth in the recusal motion and affidavit, which also is inappropriate.

We have previously held that a judge cannot become actively involved in presenting evidence or argument against a motion seeking his recusal without that defense itself becoming a basis for recusal. See Isaacs, 257 Ga. at 128. See also Flamm, supra, § 15.7, at 435 (collecting cases and explaining that "a judge who personally refutes a party's allegations of judicial bias . . . may appear to a reasonable person to have exhibited a personal interest in the outcome of the litigation, or to have aligned himself with the party resisting the judge's disqualification," and that "by attempting to refute a charge of bias, a judge may become – or appear to have become – an adversary of the party seeking his disqualification" (footnotes omitted)). It may be appropriate for the judge to disclose information relevant to his potential recusal, which the Code of Judicial Conduct encourages judges to do sua sponte, see footnote 10 above, and such

29

disclosure may be necessary if the judge to whom a recusal motion has been referred for decision holds an evidentiary hearing and the judge whose recusal is sought is the only readily available source of relevant information. See, e.g., Turner v. State, 280 Ga. 174, 174 (626 SE2d 86) (2006). In these situations, however, the disclosure must be made in a way that is as objective, dispassionate, and non-argumentative as possible, so that the judge is not reasonably perceived as a hostile witness or advocate.[15]

Judge Green appears to have made his statements at the hearing, which we have recited above, in response to Post's request for disclosures. Oral disclosures at a hearing on a recusal motion are far riskier than, say, disclosures

---

[15] As the Court of Appeals has cautioned:

> The judge hearing the motion to recuse *should exercise extreme caution* in permitting the trial judge, against whom the motion has been brought, to be called as a witness, because the very process of examination or cross-examination of the judge may be such as to cause the perception of prejudice or cause the judge to "become so involved in a controversy that his [or her] objectivity could reasonably be questioned" by the treatment by movant's counsel intentionally. Isaacs v. State, [257 Ga. at 128]. While the motion may be without legal grounds, the hearing process may through indirection achieve what the movant could not achieve directly. [Only w]here there is no other available witness as to the subject of inquiry and the subject of inquiry is relevant and material to the motion and does not invade the privileged thought processes of the judge in reaching prior rulings should the hearing judge permit the trial judge to be examined; then, only the hearing judge can protect the trial judge from being abused as a witness.

Baptiste v. State, 229 Ga. App. 691, 696 n.4 (494 SE2d 530) (1997) (emphasis in original).

30

that are not made in the context of a motion challenging the judge's impartiality or that are made in writing, which reduces the danger of the judge's being pulled into a back-and-forth exchange with counsel about recusal allegations as occurred here. See Turner, 280 Ga. at 174 (noting without disapproval the consideration, by the judge assigned to decide a recusal motion, of the originally assigned judge's written statement describing his acquaintance with the defendant and her mother).

Under the circumstances here, a reasonable person could conclude that Judge Green appeared to be taking a personal interest in the outcome of the recusal motion that Post had filed and Fripp and Brown had purported to join. As we concluded in Isaacs,

> A judge has no interest in sitting on a particular case; at most, his interest lies in protecting his own reputation. His efforts at defending himself against a motion to recuse will inevitably create an appearance of partiality. One reason is that if he defends himself he becomes an adversary of the movant for recusal. This adversarial posture may create an antipathy which persists after the motion to recuse is denied. We recognize that judges may be sorely tempted to respond to motions to recuse which they perceive as gratuitously defamatory. We also recognize that a judge who actively resists recusal may be fully capable of even-handedly presiding if the motion is denied. Nevertheless, we think that these factors are heavily outweighed by the necessity of preserving the public's confidence in the judicial system.

31

257 Ga. at 128.

For these reasons, Fripp's and Brown's recusal motions based on Judge Green's statements during the May 31, 2011 hearing should have been referred for reassignment to another judge to decide.  We see no need to remand these two cases for such reassignment as we are doing in Post's case, however, because the relevant facts supporting Fripp's and Brown's recusal motions – Judge Green's statements at the hearing – are presented in the hearing transcript, and the judge to whom the motion should have been referred would have had no choice based on those facts but to grant the motion and order Judge Green's recusal from Fripp's and Brown's cases.  Accordingly, we reverse the orders denying Fripp's and Brown's recusal motions, vacate their convictions, and remand their cases to the trial court with direction that the cases be reassigned to a new judge to continue with pretrial proceedings from the point at which Brown and Fripp filed their meritorious recusal motions.  All proceedings and orders after that point are void as to Fripp and Brown and have no legal effect. See Propst, 288 Ga. at 864.[16]

---

[16] Given this conclusion, we need not address Brown's other enumerations of error.

32

Judgment in Case No. S15A1189 vacated, and case remanded with direction. Judgments in Case Nos. S15A1190 and S15A1193 reversed in part and vacated in part, and cases remanded with direction. All the Justices concur.