**THIRD DIVISION**
**DOYLE, P. J.,**
**McFADDEN, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**March 16, 2022**

# In the Court of Appeals of Georgia

A21A1576. A & M HOSPITALITIES LLC et al. v. ALIMCHANDANI.

DOYLE, Presiding Judge.

In the third appearance of this case before this Court,[1] A & M Hospitalities, LLC; JDS&J Enterprises, LP; David B. Motley; Jane P. Motley; MotManco, Inc.; MotManco, LLC; JPM Advertising, Inc.; and DJ Land & Development, LLC, (collectively, "the defendants") appeal the trial court's orders: granting Prenita Alimchandani ("the plaintiff") leave to file a second amended complaint ("SAC")

---

[1] See *A&M Hospitalities v. Alimchandani*, 351 Ga. App. 310 (828 SE2d 615) (2019) ("*Alimchandani I*") (affirming the trial court's appointment of Christopher Cohilas as an auditor), cert. denied Feb. 10, 2020; *A&M Hospitalities et al. v. Alimchandani*, 359 Ga. App. 271 (856 SE2d 704) (2021) ("*Alimchandani II*") (affirming the trial court's confirmation of the arbitration award and reversing the orders appointing Cohilas as a "special master/auditor" and requiring the defendants to pay his auditor fees prior to final judgment).

instead of dismissing the case based on res judicata; denying the defendants' motion to stay litigation and granting the plaintiff's motion to stay the 2020 arbitration; denying the defendants' motion to recuse; and granting the plaintiff's motion to appoint a receiver. For the reasons that follow, we reverse and remand the case.

This case has a protracted procedural history as relayed in *Alimchandani I*:

The record shows that Alimchandani and Jane and David Motley jointly created A&M in 1998 to develop and operate a Hampton Inn in Lake Park, Georgia. Originally, Jane Motley owned a 75 percent interest in A&M and Alimchandani owned 25 percent. From the beginning, operational control and decision making for A&M was vested with Jane Motley, who was designated A&M's manager. In 2006, half of Jane Motley's 75 percent interest was transferred to David Motley, and then the interests of Jane and David Motley were both transferred to JDS&J Enterprises, LP, a limited partnership comprising of Jane and David Motley and their children. At the same time, David Motley was made a co-manager of A&M with Jane Motley.

In October 2017, Alimchandani filed the instant lawsuit against . . . the defendants[], seeking the judicial dissolution of A&M and raising claims of breach of fiduciary duties and violations of Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"), OCGA § 16-14-1 et seq. In her complaint, Alimchandani alleged that between 2008 and 2014, the Motleys misappropriated, wasted, and abused A&M's assets, failed to make required distributions to her as a partner of A&M, failed

2

to provide her with notice of the transfer of Jane Motley's interest to David Motley and JDS&J Enterprises, LP, failed to provide her with required financial information, threatened the employment of Alimchandani's husband (a hotel operations manager at A&M), failed to hold annual meetings, and failed to communicate with her or deal in good faith. Alimchandani alleged that this conduct occurred in an apparent effort to freeze her out of A&M and to transfer business away from A&M to other companies owned by the Motleys and in which Alimchandani did not have an ownership interest.

At the same time that she filed the complaint, Alimchandani also filed a motion for the appointment of a receiver and related injunctive relief, alleging that she would be "subjected to immediate and irreparable injury, loss and damage" if A&M was not placed in a receivership.[2]

On November 22, 2017, the defendants moved to compel arbitration pursuant to the arbitration clause in the parties' Operating Agreement. The plaintiff opposed the motion, and the trial court denied it without explanation in July 2018. On January 17, 2018, while her opposition to the defendant's motion to compel arbitration remained pending, the plaintiff switched gears and filed a demand for arbitration with AAA.

---

[2] *Alimchandani I*, 351 Ga. App. at 310-311.

In July 2018, the trial court appointed Christopher Cohilas as "receiver" "for the purposes of audit and discovery,"[3] ordering "that Cohilas was to receive 'reasonable compensation' for his services, paid by A&M."[4] Following the August 2018 AAA arbitration, the arbitrator issued a final award on September 28, 2018, finding in favor of the defendants on all claims and awarding them damages in the amount of $95,093.52, which included $70,800 for attorney fees.[5] On October 1, 2018, the defendants moved to confirm the award, and on December 28, 2018, the plaintiff moved to vacate it.[6]

On November 30, 2018, the plaintiff filed an amended complaint seeking judicial dissolution of the company, appointment of a receiver, and other equitable relief. Meanwhile, the defendants had appealed the limited receiver order, and on May 15, 2019, this Court affirmed the appointment, "concluding that based on the

---

[3] Id. at 312.

[4] *Alimchandani II*, 359 Ga. App. at 271-272.

[5] See id. at 272.

[6] See id.

language of the order, the trial court had actually appointed Cohilas as an auditor, not a receiver, and that the appointment was not an abuse of discretion."[7]

During the pendency of the appeal, the defendants filed a motion to clarify the appointment order.[8] Upon remand on June 14, 2019, the defendants moved for summary judgment, arguing that all of the plaintiff's claims were or could have been asserted in the arbitration. The record does not reflect a ruling on the defendants' summary judgment motion.

On October 7, 2019, the trial court issued an order ("the special master/auditor order") clarifying Cohilas's appointment, explaining that Cohilas

> was appointed as an auditor and special master as those terms are contemplated and authorized by OCGA §§ 9-7-1, 9-7-2, 9-7-3, and Uniform Superior Court Rule 46. Specifically, the court vested Cohilas with authority to, among other things: conduct an accounting of A&M; hear motions, allow amendments, and pass upon all questions of law and fact; address all pretrial and discovery matters; monitor implementation of and compliance with all orders of the court, and he is permitted to impose upon a party any non-contempt sanction provided by OCGA §§ 9-11-37 and 9-11-45; conduct all trial proceedings and make and recommend findings of fact on all issues to be decided by the court

---

[7] Id.

[8] See id.

without a jury; and engage in ex parte communications with the parties, counsel, and the trial court for certain purposes. The special master/auditor order also restated the payment provision in the initial order, with minor changes.[9]

Thereafter, on October 23, 2019, the plaintiff moved for leave to file the SAC adding several causes of action against the then-existing defendants and adding as parties MotManCo., Inc.; MotManCo, LLC; JPM Advertising, LLP; and DJ Land Development, Inc. On December 6, 2019, after the defendants filed a mandamus petition in superior court, and more than a year after the defendants moved for confirmation of the award, the trial court confirmed the arbitration award.[10] The defendants appealed the special master/auditor appointment order on December 6, 2019, and the plaintiff appealed the confirmation on December 17, 2019.[11]

On February 17, 2020, Cohilas entered an order granting the plaintiff's motion for leave to file the SAC.[12] On June 1, 2020, the defendants filed an arbitration demand with AAA demanding that the plaintiff arbitrate the claims raised in her SAC

[9] Id. at 272-273.

[10] See id. at 273.

[11] The appeals were consolidated in *Alimchandani II*, 359 Ga. App. at 273.

[12] The trial court approved the February 17, 2020 order on June 15, 2020.

and moved to stay the litigation pending arbitration. On June 17, 2020, the plaintiff moved to stay arbitration. On August 13, 2020, the trial court entered an order staying arbitration and denying the defendants' motion to stay the litigation, finding that defendant A&M had waived its purported right to compel arbitration by "faili[ng] to challenge the portion of the [c]ourt's 2018 [o]rder [d]enying [a]rbitration on appeal."

On October 1, 2020, the defendants filed a motion to disqualify and recuse the trial judge, alleging that he had directed the superior court clerk to not transmit the record to this Court even though the record in *Alimchandani II* was ready. On November 13, 2020, the trial court denied the motion without assigning the recusal motion to another judge.

On January 26, 2021, the trial court appointed a receiver "to oversee . . . A&M's assets, accounts, and all other interests currently owned by . . . A&M, including all of its subsidiaries" and to turn over to him

> all assets, wherever located, in their entirety and unaltered, including but not limited to A&M's hotels, properties, assets, M3 accounting software, documents, books and records, checks, certificates of deposit, financial statements, bank accounts, financial instruments, money, receivables, keys to any and all security boxes and the exact location of said security boxes, and equipment.

In the order, the trial court concluded that "there is a clear and urgent need for a receiver because . . . there is a significant risk that A&M's corporate assets, which are 25 [percent] owned by [the p]laintiff will be dissipated," noting a prior $6 million transfer from A&M to defendants MotManCo. and JDS&J. The defendants filed the notice of appeal in the instant case on January 29, 2021.

On March 16, 2021, this Court issued its opinion in *Alimchandani II*, affirming the arbitration confirmation order[13] but reversing the appointment order, holding that Cohilas was disqualified as a special master for a multitude of reasons and that he was performing "fundamentally incompatible duties . . . at odds with the role of a special master."[14] This Court also held that the trial court erred by requiring the defendants to pay Cohilas's auditor fees prior to final judgment.[15]

On May 6, 2021, before the remittitur in *Alimchandani II* was issued, the trial court entered a sua sponte order to "address" this Court's March 16, 2021 opinion and

---

[13] See id. at 277-283 (3).

[14] Id. at 274-276 (1).

[15] See id. at 276-277 (2).

8

"provide guidance to the parties."[16] Therein, the trial court "formally remove[d]" from Cohilas any special master responsibilities in light of the appointment of a receiver, noting that the court would perform any additional judicial functions going forward. The court also addressed the auditor fees, stating that contrary to this Court's holding, the defendants had not been previously required to advance payments for fees to Cohilas; instead the prior fee awards "were 'interim allocations' which the [c]ourt will ultimately consider and assess in a final judgment" as "intended by the statutory framework."[17]

On June 25, 2021, the defendants filed in this Court a petition for mandamus against the trial court judge, Brian A. McDaniel, seeking an order (1) compelling him to vacate his May 6, 2021 order, which they allege conflicts with this Court's opinion in *Alimchandani II*; (2) directing the return, bond, or escrow of all fees the defendants

---

[16] We note that the trial court lacked jurisdiction to issue the order before the remittitur was issued, further exacerbating the procedural confusion in this case by failing to stay the litigation pending appeal. See *Massey v. Massey*, 294 Ga. 163, 166 (3) (751 SE2d 330) (2013) ("[A]n appellate court maintains jurisdiction over a case until it has issued the remittitur and the remittitur has been received and filed in the clerk's office of the court below. Only then does the trial court regain jurisdiction to take further action with respect to the judgment appealed.") (citation and punctuation omitted).

[17] The court "affirm[ed]" the past fee awards as "fee allocation awards" and indicated that it would continue to consider future interim fee applications by Cohilas.

9

were required to pay to Cohilas; and (3) directing that Cohilas be removed and disqualified from serving in this matter.[18]

1. *Res judicata*. The defendants contend that res judicata bars the plaintiff's claims raised in the SAC. We agree.

(a) As an initial matter, we reject the plaintiff's argument that this issue is not ripe because the trial court has not yet ruled on it. After the defendants moved for summary judgment on the basis of res judicata in June 2019, the plaintiffs filed the motion for leave to file the SAC in October 2019. In June 2020, the trial court granted the plaintiff's motion for leave to file the SAC without ruling on the summary judgment motion. The court went on to stay arbitration of the claims raised in the SAC, deny the defendants' motion to stay litigation of those claims, deny the defendants' motion to recuse, appoint a receiver, and issue the May 2021 order referring to the receiver and noting that the court intended to rule on future judicial functions. These actions, combined with the trial court's apparent refusal to rule on the summary judgment that has been pending for over two years, made it apparent that the trial court is permitting the plaintiff to pursue the claims raised in her SAC

---

[18] The defendants filed the petition for mandamus in Case No. A20A1688, which appeal was addressed in *Alimchandani II*, 359 Ga. App. at 275-283. The petition remains pending.

10

and rejecting the defendants' res judicata arguments.[19] Indeed, without such an implicit ruling, the need for and purpose of the trial court's additional orders are inexplicable.

(b) We now turn to the issue presented. "Res judicata acts as a procedural bar to claims that were raised or could have been raised in a prior action."[20] Pursuant to OCGA § 9-12-40, "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."

---

[19] See, e.g., *Tyler v. Thompson*, 308 Ga. App. 221, 223 (2) (b) (707 SE2d 137) (2011) (finding that "it is presumed that the court implicitly denied . . . motions to compel [when it granted] summary judgment" and affirming trial court's judgment) (punctuation omitted); *Yates v. CACV of Colorado*, 303 Ga. App. 425, 433 (3) (693 SE2d 629) (2010) (affirming "the trial court's implicit denial" of motion to vacate arbitration award); *Ades v. Werther*, 256 Ga. App. 8, 9-10 (1) (567 SE2d 340) (2002) (disagreeing with the trial court's "implicit" finding that a contract existed); *State v. Blackwell*, 245 Ga. App. 135, 142 (2) (d) (537 SE2d 457) (2000) (holding that record supports the trial court's "implicit[]" finding of bad faith).

[20] *Bryan County v. Yates Paving & Grading Co.*, 281 Ga. 361, 363 (638 SE2d 302) (2006). We note that the issue of the res judicata effect of a previous arbitration on a subsequent arbitration is a matter for determination by the trial court. See id. at 363-364.

"There are three prerequisites to the application of res judicata: (1) identity of the cause of action; (2) identity of the parties or their privies; and (3) a previous adjudication on the merits by a court of competent jurisdiction."[21]

> Res judicata applies even if some new factual allegations have been made, some new relief has been requested, or a new defendant has been added. It is only where the merits were not *and* could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were *or* could have been determined, then the defense is valid.[22]

Here, the third prong – a previous adjudication on the merits by a court of competent jurisdiction – was satisfied by the prior arbitration.[23] The first prong –

---

[21] *Smith v. Lockridge*, 288 Ga. 180, 185 (4) (702 SE2d 858) (2010).

[22] (Citations and punctuation omitted; emphasis in original.) *Yates Paving & Grading Co. v. Bryan County*, 287 Ga. App. 802, 805 (2) (652 SE2d 851) (2007), citing *Dalton Paving & Constr. v. South Green Constr. of Ga.*, 284 Ga. App. 506, 508 (643 SE2d 754) (2007), *Green v. Bd. of Directors of Park Cliff Unit Owners Assn.*, 279 Ga. App. 567, 569 (2) (631 SE2d 769) (2006), *Bennett v. Cotton*, 244 Ga. App. 784, 785 (1) (536 SE2d 802) (2000), *Piedmont Cotton Mills v. Woelper*, 269 Ga. 109, 110 (498 SE2d 255) (1998).

[23] See *Yates Paving*, 287 Ga. App. at 805 (2) ("The doctrine of res judicata applies to arbitration proceedings and prevents re-litigation of matters that were or could have been litigated in a previously-adjudicated action.") (citation and punctuation omitted).

12

identity of the cause of action – is also satisfied. The arbitration clause in the parties'

contract expressly covers "[a]ny dispute, controversy[,] or claim arising out of or in

connection with, or relating to the [A&M Operating] Agreement." The defendants

moved to compel arbitration of all claims raised in the initial complaint, and after the

plaintiff objected, the trial court denied the motion. The plaintiff then filed an

arbitration demand with AAA naming A&M and JDS&J as respondents and seeking

"immediate and instant dissolution of" A&M. She later amended the demand,

alleging that JDS&J "breached numerous terms of the Operating Agreement,

fiduciary duties owed to [her]," including "looting of company assets" and "financial

manipulation," and that JDS&J and the Motleys breached their fiduciary duties to her.

In the final award, the arbitrator ruled that the plaintiff "cannot succeed on the

[d]issolution [c]laim," rejecting her breach of fiduciary duty claims against JDS&J.[24]

The arbitrator also found in favor of JDS&J on its counterclaim alleging that the

plaintiff breached the operating agreement and awarded it $95,093.52 in damages.

---

[24] The arbitrator did not rule on the issue of whether the Motleys owed the plaintiff a fiduciary duty because they were not parties to the arbitration agreement, and therefore, it was beyond the scope of the proceeding.

13

"All claims for relief that concern '*the same subject matter*' must be raised. Any claims for relief concerning the same subject matter that are not raised are thereafter barred under OCGA § 9-12-40."[25] The phrase "arising out of" in the arbitration clause "is broad enough to encompass" the claims raised by the plaintiff in the SAC.[26] The claims raised in the SAC all allege that the defendants impaired the plaintiff's rights and interests under the operating agreement and either were or could have been raised in the arbitration.[27]

---

[25] (Citation omitted; emphasis in original.) *Bennett*, 244 Ga. App. at 786 (1), quoting *Lawson v. Watkins*, 261 Ga. 147, 149 (2) (401 SE2d 719) (1991).

[26] *Bennett*, 244 Ga. App. at 786 (1).

[27] The SAC alleges the following claims: Counts I and IV (breach of fiduciary duty), raised in the arbitration; Count II (RICO), based on the same allegations already raised; Count III (dissolution), made in the arbitration; Counts V & VI (conversion and fraudulent transfers), involving allegations of misappropriation made in the arbitration; Count VI (civil conspiracy) alleges a conspiracy among the defendants, including the new ones that the plaintiff alleges are in privity with the arbitration defendants; Count VII (fraudulent misrepresentation), based on conduct occurring between 2009 and 2013; Count VIII (fraudulent concealment), alleging that the defendants failed to provide the plaintiff with financial information, allegations that were raised in the arbitration; Count X (unjust enrichment), seeking recovery for misdeeds alleged in the arbitration; Count IX (fraudulent transfer), raised in the arbitration; Count XI (attorney fees), derivative of earlier claims. None of the claims raised in the SAC involve conduct occurring after the arbitration award was entered in September 2018.

Finally, the second prong – identity of the parties or their privies – is also satisfied. The plaintiff repeatedly alleged in the SAC that all of the defendants in this action have a "unity of interest and/or ownership" with and are "alter egos" of JDS&J, A&M, and each other. "'[P]rivies are all persons who are represented by the parties and claim under them, all who are in privity with the parties; the term privity denoting mutual or successive relationship to the same rights of property.'"[28] And the fact that the defendants other than A&M and JDS&J were not technically parties to the arbitration does not preclude application of res judicata.[29] Thus, the identity of parties or their privies requirement has been met.

> Res judicata requires that a party assert all claims that arise out of the underlying facts in one proceeding. [The plaintiff . . . was] required to seek recovery in one proceeding against [the defendants] for all [her] claims arising out of the [operating agreement]. [She] may not hold some claims in abeyance while others are submitted to binding arbitration.[30]

---

[28] *Bennett*, 244 Ga. App. at 786 (1), quoting *Monroe v. Kersey*, 207 Ga. App. 108, 109 (5) (427 SE2d 80) (1993).

[29] See *Bennett*, 244 Ga. App. at 785 (1); *Dalton Paving*, 284 Ga. App. at 508.

[30] *Bennett*, 244 Ga. App. at 787 (1) We reject the plaintiff's argument that the defendants somehow waived their right to argue res judicata because they limited the scope of the arbitration. The defendants initially sought to arbitrate all of the claims, and the plaintiff objected. She later filed an arbitration demand, and she was the party

15

Therefore, the claims raised in the SAC are barred.

2. *Recusal*. The defendants argue that the trial court erred by failing to assign the recusal motion to another judge and denying the motion. We agree.

In their recusal motion, the defendants reiterate that it took the trial court more than a year to rule on their request for confirmation of the arbitration award, doing so only after they filed a mandamus petition in superior court seeking a ruling on the confirmation. The defendants filed their notice of appeal in *Alimchandani II* on December 17, 2019, 11 days after the entry of the order confirming the arbitration award. After a delay of several months, the plaintiff finally paid the bill of costs on June 26, 2020, after the defendants filed a motion to dismiss the appeal. The defendants attached to the recusal motion the affidavits of two of their attorneys, who averred that on September 24, 2020, one of them called the clerk's office to inquire about the delay in transmitting the record on appeal; the Deputy Clerk of Court advised that "while the record had been ready for some time, he had not forwarded it the Georgia Court of Appeals at the direction of Judge Brian McDaniel[, the trial

---

that dictated the scope of the proceeding, electing to include less than all of her claims or defendants. The fact that the defendants held her to that during the arbitration does not constitute waiver.

16

judge presiding over the case]" and "that he was instructed to hold the record by Judge McDaniel's office until further notice." According to counsel, defendants were never advised of the court's directive to the clerk, and they have been ordered to pay "hundreds of thousands of dollars" to Cohilas while awaiting a ruling on their motions and transmission of the record to this Court.

The trial court denied the recusal motion without sending it to another judge, concluding that the affidavits submitted by the defendants

> are legally insufficient to support a motion to disqualify or recuse because the affidavits fail to set forth allegations of "bias stemming from extra-judicial conduct or statements.". . . Even taking the affidavits as true, they fail to show a bias that may result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. . . . [The d]efendants' affidavits acknowledge that the reason for the [c]ourt's delay in transmitting the appeal record to the Georgia Court of Appeals was their June 4, 2020 motion to dismiss the appeal. . . . None of the affidavits describe any statement by the [c]ourt or other action (apart from the delay in record transmission) which they contend evidences bias. . . . Even if all the facts alleged in [the d]efendants' affidavits were true, and the Superior Court in purported error caused there to be a delay in the transmission of the record on appeal, such error

17

does not show an intense bias that prevents [the d]efendants from receiving impartial treatment.[31]

On appeal, the defendants argue that the trial court's "secret directive" to the clerk requires his disqualification/recusal and that the court erred by denying the recusal motion without submitting it to another judge for consideration pursuant to Uniform Superior Court Rule ("USCR") 25.3.

"It is vital to the functioning of the courts that the public believe in the absolute integrity and impartiality of its judges, and judicial recusal serves as a linchpin for the underlying proposition that a court should be fair and impartial."[32] USCR 25 sets forth the formal procedure governing recusal of superior court judges:

> USCR 25.3 directs that when the trial judge assigned to a case is presented with a recusal motion and an accompanying affidavit, "the judge shall temporarily cease to act upon the merits of the matter" and determine "immediately": (1) whether the motion is timely; (2) whether the affidavit is legally sufficient; and (3) whether the affidavit sets forth facts that, if proved, would warrant the assigned judge's recusal from the

---

[31] (Citation and punctuation omitted.) The trial court further noted that the recusal motion was "moot" because the Clerk had since transmitted the record to this Court.

[32] (Citation omitted.) *Mayor & Aldermen of the City of Savannah v. Batson-Cook Co.*, 291 Ga. 114, 114 (728 SE2d 189) (2012).

18

case. If all three criteria are met, "another judge shall be assigned to hear the motion to recuse." The decision about referring a recusal motion for reassignment to another judge does not involve an exercise of discretion by the judge whose recusal is sought. Rather, whether the three threshold criteria have been met is a question of law, which an appellate court reviews de novo.[33]

The plaintiff is correct that "[a]llegations consisting of bare conclusions and opinions that the assigned judge is biased or prejudiced for or against a party . . . are not legally sufficient to support a recusal motion or to justify forwarding the motion for decision by another judge."[34] Nevertheless, "[i]n all other respects, . . . the assigned judge must take the motion at face value, treating it as though 'all of the facts set forth in the affidavit are true.'"[35]

> [When] deciding whether this assumed state of facts would require recusal, USCR 25.3 says that the assigned judge is to be guided by . . . Rule 2.11 of the revised Code of Judicial Conduct that took effect on January 1, 2016.

---

[33] (Citations omitted.) *Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 766 (2) (815 SE2d 70) (2018).

[34] (Punctuation omitted.) Id. at 767 (2).

[35] Id. at 767 (2), quoting USCR 25.3.

Rule 2.11 (A) in the revised Code says generally that "judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned," followed by a non-exclusive list of specific situations in which recusal is required. . . . The standard is an objective one. The facts must be considered from the perspective of a reasonable person rather than from the perception of interested parties or their lawyer-advocates, or from the subjective perspective of the judge whose continued presence in the case is at issue. The operative question is whether a fair-minded and impartial person would have a reasonable perception of a judge's lack of impartiality based upon objective facts set forth in the affidavit or reasonable inferences therefrom.

If the motion and affidavit, taken at face value, satisfy the three threshold criteria, the assigned judge must refer the motion for reassignment and may not oppose the motion. The judge whose recusal is sought may not respond to the motion or attempt to refute the allegations, which stand denied automatically, no matter how false or even defamatory the judge might know or perceive the allegations to be.[36]

Here, assuming the truth of the facts alleged, the affidavits constitute evidence that the trial court, without notifying the parties, contacted the clerk's office and directed that it delay transmission of the record to this Court in a case that had already

---

[36] (Citations and punctuation omitted.) Id. at 767-768 (2).

suffered an unduly lengthy delay, during which the defendants were required to pay large sums of money to a receiver appointed by the court *after* the defendants prevailed at arbitration and were merely awaiting confirmation. Moreover, the trial court attempted to explain its actions in the order denying the motion, which it is prohibited from doing. And the trial court slightly, but crucially, mischaracterized the defendants' allegations regarding the cause of the delay. The defendants alleged that the trial court clerk remarked that the delay in forwarding the record on appeal "*might have had* something to do with a . . . June 4, 2020 Motion to Dismiss [the plaintiff's appeal[,]" but the trial court affirmatively stated that the defendants "*acknowledge[d]* that the reason for the [c]ourt's delay in transmitting the appeal record . . . was their June 4, 2020 motion to dismiss the appeal." (Emphasis supplied.) Under these circumstances, the defendants' recusal motion should have been referred for reassignment to another judge.[37] But "[w]e see no need to remand [this] case[] for such reassignment."[38] By advancing a factual claim in opposition to the recusal

---

[37] See *Butler v. Biven* Software, 222 Ga. App. 88, 90 (1) (473 SE2d 168) (1996) (holding that allegations of a "secret" or "ex parte" order by the judge "raise[] genuine questions of fact involving the trial judge's own actions, and this trial judge could not sit as trier of fact on allegations concerning his own actions").

[38] *Post v. State*, 298 Ga. 241, 258 (3) (b) (779 SE2d 624) (2015).

motion and mischaracterizing the defendants' allegation regarding the reason for the delay, the trial court evaluated and accepted the truth of his own factual allegations, mandating his recusal. As the Supreme Court of Georgia has explained,

> a judge cannot become actively involved in presenting evidence or argument against a motion seeking his recusal without that defense itself becoming a basis for recusal, [because] a judge who personally refutes a party's allegations of judicial bias may appear to a reasonable person to have exhibited a personal interest in the outcome of the litigation, or to have aligned himself with the party resisting the judge's disqualification, and that by attempting to refute a charge of bias, a judge may become – or appear to have become – an adversary of the party seeking his disqualification.[39]

Accordingly, we reverse the order denying the defendants' motion for recusal and remand the case to the trial court with direction that the case be reassigned to a new judge to continue with any additional necessary proceedings (e.g., judgment, determination of fees for receiver/special master/auditor).[40]

---

[39] (Citations and punctuation omitted.) Id. at 257 (3) (b), citing *Isaacs v. State*, 257 Ga. 126, 128 (355 SE2d 644) (1987) and quoting Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges § 15.7, at 435 (2d ed. 2007).

[40] See *Butler*, 222 Ga. App. at 90-91 (2). We observe that in his sua sponte order following our opinion in *Alimchandani II* – filed before the remittitur was issued – the trial court attempted to explain his rationale and made rulings in violation of this Court's opinion. That order is the subject of a mandamus petition filed in this

22

3. *Receivership.* Based on our holding in Division 1, this case is now over, with the exception of determining fees for Cohilas and the special master. And all orders issued subsequent to the order denying the defendants' motion to recuse, including the order appointing a receiver, are void.[41] Thus, the defendants' arguments regarding receivership are moot.

4. *Motions to stay litigation and compel arbitration.* Our holding in Division 1 that the SAC is barred by res judicata renders this enumeration of error moot.

*Judgment reversed and case remanded. McFadden, P.J., concurs fully and specially. Hodges, J., concur*s *in part and dissents in part.*

---

Court by the defendants. We note that the Office of the Attorney General, at Judge McDaniel's request, filed a brief on his behalf in the mandamus action in this Court, despite the fact that the plaintiff had already filed a brief in opposition to the mandamus petition. Clearly, at this point, the trial court judge has become "an adversary of the party seeking his disqualification." *Post*, 298 Ga. at 257 (3) (b) quoting *Flamm*, supra.

[41] See *Butler*, 222 Ga. App. at 90-91 (2). The defendants' mandamus petition arising out of the trial court's sua sponte order is dismissed as moot.

A21A1576. A & M HOSPITALITIES LLC et al. v. ALIMCHANDANI.

MCFADDEN, Presiding Judge, concurring fully and specially.

I concur fully in the majority opinion. And I agree that our decision in this case moots the petition filed in Case No. A20A1688, which sought to invoke our original mandamus jurisdiction. So I concur in the dismissal of that petition as moot.

That disposition removed the necessity of resolving the novel issues raised by that mandamus petition. Normally there would be nothing more to say about those issues. But the uncertainties regarding the scope of our original mandamus jurisdiction and regarding the proper way to invoke it are great enough that I think it useful to outline those issues. I also write to emphasize the importance of auditors, receivers, and special masters to the efficient functioning of our judiciary.

1. *Our original mandamus jurisdiction.*

As explained in the majority opinion, after we entered our opinion in *A&M Hospitalities v. Alimchandani*, 359 Ga. App. 271 (856 SE2d 704) (2021), the trial court sua sponte issued an order in which he disputed our reasoning and announced that he would proceed contrary to our holding. A&M Hospitalities filed the mandamus petition in response to that order.

Our Constitution provides that we have original mandamus jurisdiction in part "to protect or effectuate [our] judgments." Ga. Const. of 1983, Art. VI, Sec. I, Par. IV. provides in part,

> Each court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments; but only the superior and appellate courts and state-wide business court shall have

the power to issue process in the nature of mandamus, prohibition, specific performance, quo warranto, and injunction.

It is well settled that the scope of the appellate courts' mandamus jurisdiction is limited. Generally the way to mandamus a superior court judge is to file a petition that will be decided by another superior court judge. *Graham v. Cavender*, 252 Ga. 123 (311 SE2d 832) (1984) ("Being the respondent[], the superior-court judge[] will disqualify, another superior-court judge will be appointed to hear and determine the matter, and the final decision may be appealed[.]"). There is no case law identifying any issues that fall within our mandamus jurisdiction. Here A&M argued that the trial court's defiance of our judgment required us to issue a writ of mandamus to "protect or effectuate [our] judgment[]."

We asked at oral argument whether A&M's failure to invoke the interlocutory appeal procedure—at least to request a certificate of immediate review—constituted failure to employ an available adequate remedy at law. See OCGA § 5-6-34 (b). A&M's counsel replied that the mandamus proceeding was not an appeal, that the appeal had already been heard and decided, and that the question now was whether our judgment would be effectuated. And indeed our earlier judgment was now the law of the case. OCGA § 9-11-60 (h).

3

A&M's counsel offered a similar response when we asked if our jurisdiction over the case had expired along with the second term of court after it was docketed here. That question implies another: whether the mandamus petition should have been filed as a new proceeding—something for which our rules do not presently provide.

We also asked about the line between erroneous administration of one of our decisions and defiance by the trial court. A&M's counsel responded that the facts in this case are not close to the line.

In short, the scope of the appellate courts' mandamus jurisdiction and the procedure for invoking it are less than clear. But because the mandamus petition is dismissed as moot, resolution of these issues in this case would be advisory, so we cannot resolve them today.

2. *Auditors, receivers, and special masters*.

Finally, I wish to highlight that the trial court's original appointment of an auditor in this case was affirmed by this Court, in which we recognized the inherent value of "auditors and special masters [who] primarily assist the trial court in resolving issues in the litigation." See *A&M Hospitalities v. Alimchandani*, 351 Ga. App. 310, 314-316 (1) (828 SE2d 615) (2019). Although a subsequent appointment order was reversed, see *Alimchandani*, 359 Ga. App. at 273-276 (1), and the

majority's disposition of this appeal necessarily voids the trial court's order appointing a receiver, I do not believe that anything we have said in these cases should be construed to discourage attorneys from serving as auditors, receivers, or special masters — critical roles upon which the efficient function of our judiciary depends. See, e.g., *Cordoza v. Pacific States Steel Corp.*, 320 F3d. 989, 995 (I) (9th Cir. 2003) ("A special master is a 'surrogate' of the court 'and in that sense the service performed is an important public duty of high order in much the same way as is serving in the Judiciary.") (citation omitted).

A21A1576. A & M HOSPITALITIES LLC et al. v. ALIMCHANDANI.

HODGES, Judge, concurring in part and dissenting in part.

1. *Res judicata.* I concur fully in Division 1 (a) of the majority opinion. I agree that, based upon the authority cited by the majority, we may address the defendants' arguments concerning the application of res judicata. I also concur fully in Division 1 (b) to the extent the majority holds that res judicata bars claims based upon actions and conduct that could have been addressed in the plaintiff's original complaint, the

first amended complaint, or the arbitration. However, I do not agree that claims raised in the plaintiff's second amended complaint that arose after the final arbitration award are barred by res judicata and would, instead, allow those claims to proceed.

2. *Recusal*. Furthermore, I do not believe that the trial court's order denying the defendants' motion to recuse "advanc[ed] a factual claim in opposition to the recusal motion" or demonstrated an "[attempt] to explain its actions. . . ." Therefore, I also disagree with the majority's decision to recuse the original trial judge without a remand because I do not think the trial judge went so far as to refute the allegations made in defendants' affidavits in support of their motion to recuse. Rather, I would remand the recusal issue to the trial court, for assignment to a another superior court judge, to review whether the original trial judge should have recused or was correct in denying the defendants' motion to recuse.[1]

The circumstances in *Post v. State*, which justified the reversal of the trial court's denial of a motion to recuse and which are relied upon by the majority to preclude a remand, are far different from the present case. 298 Ga. 241, 254 (3) (a)

---

[1] Of course, I express no opinion as to what the result of the reviewing judge's analysis should be on remand.

(779 SE2d 624) (2015).[2] In *Post*, the record contained a transcript from a hearing on a recusal motion in which the original trial judge argued with counsel and disputed certain factual allegations in the motion. Id. at 255-256 (3) (a). Our Supreme Court noted that "a judge considering a motion seeking his recusal must evaluate the motion and accompanying affidavit solely on their face and assume that the facts set forth in the affidavit are true, even if the judge knows them to be false or incomplete; consideration of additional evidence is inappropriate at this point in the process." Id. at 256 (3) (b). Where the record clearly demonstrates that the trial judge ventured beyond this framework, as in *Post*, we need not remand the case because "the judge to whom the motion should have been referred would have had no choice based on those facts but to grant the motion and order [the original trial judge's] recusal. . . ." Id. at 258 (3) (b). I wholeheartedly agree, but those circumstances are simply not present in this case.

Instead, all we have is an order entered by the trial court denying the defendants' recusal motion based upon their alleged failure to satisfy the threshold

---

[2] *Post* involved three defendants — Post, Brown, and Fripp. The facts in this case are more analogous to those reviewed in Division 2 of *Post* (involving defendant Post), which I believe controls the outcome in this case. In contrast, the majority resolves this case based upon Division 3 of *Post* (involving defendants Brown and Fripp), but those facts are more egregious and are dissimilar to the facts in this case.

3

requirements of such a motion. However, as the majority correctly notes, a close reading of the trial court's order does reveal an important mischaracterization: the defendants' affidavits filed in support of the recusal motion indicated that the trial court clerk remarked that the delay in forwarding the record on appeal "*might have had something to do with a . . .* June 4, 2020 Motion to Dismiss [the plaintiff's appeal,]" while the trial court stated affirmatively that the defendants "*acknowledge[d]* that the reason for the Court's delay in transmitting the appeal record . . . was their June 4, 2020 motion to dismiss the appeal." (Emphasis supplied.) Stated differently, the defendants' affidavits, based upon a statement from a trial court clerk, aver that they were told that their motion to dismiss *may* have caused a delay in submitting the record on appeal, while the trial court's order claims that the defendants admitted that a delay occurred and that their motion to dismiss was indeed the culprit.

The trial court's characterization of the affidavit states that the defendants have conceded a cause, other than judicial bias, for the delay in transmitting the record for appeal. This characterization is problematic, because acknowledging that one thing may have caused another does not foreclose that there may have been other causes.

4

Furthermore, left unanswered is whether this apparent mischaracterization itself substantiates a claim of bias against the original trial judge.

In my view, and taking the defendants' recusal motion at face value, both the trial court's mischaracterization and an analysis of the potential for bias are issues that demand review by another superior court judge. In other words, a different superior court judge should determine why the record on appeal was held and whether the original trial judge had anything to do with it. To that end, we should follow our usual practice and remand the case to the trial court for further proceedings, including the assignment of a reviewing superior court judge. See *Post*, 298 Ga. at 253 (2) (e); Uniform Superior Court Rules 25.3, 25.4 (C).

3. *Receivership*. In view of my proposed resolution of the recusal issue, I must also dissent to Division 3 because, in the interest of judicial economy, I would reach the merits of the defendants' arguments concerning the trial court's appointment of a receiver — an analysis the majority forecloses in view of its recusal of the original trial judge and subsequent finding that all orders entered by the original trial judge after the denial of the motion to recuse are void — as the receiver appointment issue

could well arise on remand depending upon the reviewing superior court judge's recusal rulings.[3]

4. *Motions to Stay Litigation and Compel Arbitration.* Finally, the need to resolve any issue concerning the trial court's order staying the arbitration is tied to the resolution of the res judicata question. Therefore, to the extent the plaintiff's claims are barred, I agree with the majority that the defendants' arguments are rendered moot. However, for any claims that are not so precluded, the majority should address this question.

---

[3] As it is, the judge to whom this case is ultimately assigned should consider whether there is an ongoing need for a receiver.