**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 8, 2026

# In the Court of Appeals of Georgia

A26A0244. LANDY v. THE STATE.

DILLARD, Presiding Judge.

After trial, a jury convicted Charlotte Landy on eight counts of reckless conduct based on an incident in which her dogs attacked two young boys and the adults who came to the boys' aid. Landy now appeals her convictions and the denial of her motion for new trial. More precisely, she argues the evidence was insufficient to support her convictions and that the trial court erred in denying her motion for a directed verdict based on an alleged fatal variance; admitting evidence of prior acts; qualifying an animal-control officer as an expert witness; imposing an unlawful sentence; failing to recuse; and denying her ineffective-assistance-of-counsel claim. For the following reasons, we affirm Landy's convictions and the denial of her motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2021, Landy resided at 1175 Marka Lane, which is in the City of Alpharetta, Fulton County. At that time, Landy owned two large Rottweilers (a male named King and a female named Raven), which she normally confined within the fence surrounding much of her large property. But on previous occasions, the dogs escaped the confines of Landy's property and had to be retrieved and returned by neighbors. Indeed, on May 11, 2021, two of Landy's neighbors—Harring Figueiredo and Mary Ellen Merriam (who had retrieved Landy's dogs in the past)—were made aware that the dogs were loose again. Together, Figueiredo and Merriam retrieved the dogs and placed them back inside Landy's fence. And in an effort to prevent them from escaping again (which proved unsuccessful), Figueiredo used nylon twine he found to tie the metal fence gate shut.

Later that same afternoon, two young boys who lived in the neighborhood—eight-year-old R. G. and his six-year-old brother F. G.—were racing their bicycles around the cul-de-sac at the end of Landy's street when they saw her

---

[1] See, e.g., *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018) (noting when a conviction is appealed, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence).

two dogs running toward them. Believing the dogs were friendly, F. G. got off his bicycle and started walking toward the dogs to pet them; but immediately, both dogs began attacking him, with one biting his arm and throwing him to the ground. R. G. jumped off his bicycle and rushed to his brother's aid, pushing one of the dogs off F. G. Both dogs then began attacking R. G., as F. G. attempted to run away.

Meanwhile, Merriam—who had been working in her yard—heard screaming, ran to the top of her driveway, and saw Landy's dogs attacking the two boys. Without hesitating, she ran to intervene and was able to pull one of the dogs off F. G., who then ran away. A moment later, R. G. also freed himself and made a run for it. Merriam tried to hold the dogs by their collars, but they broke away and pounced on both boys again as they reached another neighbor's lawn, at which point R. G. (who was covered in blood) stopped fighting and began whimpering, "I'm dead." Merriam then flung herself between F. G., as he lay on the ground, and the other dog; told F. G. to get up and run; and turned around to push the dog in the throat as F. G. fled. As she did, the dog started biting her head and dragging her across the lawn. But it suddenly stopped as another adult arrived to intervene.

At the same time Merriam was rushing to help the boys, Joseph Boassy—a foreman overseeing a crew repairing the swimming pool of a nearby house—heard the kids screaming. Unsure if it was just kids playing, Boassy walked to the end of the driveway of the home where he was working and saw a young boy covered in blood (R. G.) being attacked by a Rottweiler on the lawn of a house on the corner. Sprinting to the yard, Boassy punched the dog in the face, causing it to let go of R. G. He then picked the boy up and started running back toward the work site where he knew there would be help. The dog gave chase and tripped Boassy by biting at his pant leg. But Boassy kicked the dog away and continued fleeing while carrying R. G. As he reached the house where he was working, several of the other workers and the homeowners met him, at which point the dogs stopped their pursuit.

Boassy then took off his shirt and wrapped it around R. G.'s throat to stop his bleeding while simultaneously urging others to call 911. Just behind him, Merriam reached the same yard and collapsed to the ground. R. G.'s father then arrived on the scene, having been informed about the incident by F. G., who made it home despite suffering a serious injury to his leg. And few minutes later, emergency medical services and police also arrived. Both boys were then transferred by ambulance to the

hospital, where they were successfully treated for their injuries. In addition, EMTs treated Merriam at the scene, and her husband drove her to the hospital for additional treatment.

The State charged Landy, via accusation, with four counts of misdemeanor reckless conduct—with each count related to the dogs' attack on the four victims, R. G., F. G., Merriam, and Boassy, respectively. In doing so, the State alleged that she caused the victims bodily harm by failing to keep her dangerous dogs properly confined, also charged her with two counts of violating a Fulton County ordinance prohibiting dogs from roaming freely with no means of restraint ("dogs at large"), and charged her with two counts of violating a Fulton County ordinance requiring dogs to have a county dog license. Landy filed a special demurrer to the reckless-conduct counts, arguing the accusation did not specify how she failed to properly confine her dogs. Two weeks later, the State amended its accusation, adding language to the first four counts stating that Landy failed to confine her dogs as required by a Fulton County ordinance.

One month before trial, the State filed a notice of its intent to admit prior-acts evidence via the testimony of Harold Fields, a handyman who had done several home-

improvement projects for Landy over the years and on one such occasion was attacked by Landy's dogs while working in her yard. Additionally, the day before trial, the State again amended the accusation. More precisely, the State separated out the reckless-conduct charges such that each of the two dogs' attack on each victim constituted a separate count, with the result now being eight counts of reckless conduct.

That same day, Landy filed a motion to recuse the trial judge, arguing that he was not impartial because during an in-chambers conference with the parties, it was the judge's suggestion for the State to amend its accusation to separate the reckless-conduct counts. The trial judge then assigned another judge to conduct a hearing on the motion At the conclusion of that hearing, the assigned judge denied Landy's motion to recuse and issued an order to that effect the next day.

On the first day of trial, before jury selection, the trial court held a hearing on the State's request to introduce prior-acts evidence via Fields's testimony. At that same time, Landy objected to the State questioning Figueiredo and Merriam about previous instances of Landy's dogs escaping from her yard, arguing that such testimony constituted prior-acts evidence for which the State failed to provide notice. The State responded that the evidence of prior escapes was intrinsically related to the

charges being tried and so notice was not required. After considering these arguments, the trial court ruled the evidence was admissible.

The case then proceeded to trial, during which the State presented the above evidence through the testimony of R. G., F. G., Merriam, Boassy, Figueiredo, and Fields. The State also called two Alpharetta Police Officers who were dispatched to the scene and who testified to observing gaps in the fencing around Landy's property. In addition, the State called Fulton County Animal Services Officer Laurie Johnson, who was similarly dispatched to the scene on the day of the attack to assist law-enforcement officers with seizing the two dogs. Importantly, the State sought to qualify Johnson as an expert on canine behavior, to which Landy objected. But after the State further questioned Johnson about her background and experience, the trial court ruled she could testify in that capacity.

At the conclusion of the evidence, Landy moved for a directed verdict, which the trial court granted as to the dogs-at-large and license charges but denied as to the reckless-conduct charges. The jury then found Landy guilty on all eight reckless-conduct charges. And after a hearing, the trial court sentenced Landy to one year in incarceration, followed by three years of house arrest and four years of probation.

Landy then filed a motion for new trial, which she amended after obtaining new counsel to include a claim that her trial counsel rendered ineffective assistance. But after conducting a hearing on her motion, the trial court issued an order denying it. This appeal follows.

1. Landy first argues that the evidence was insufficient to support her convictions on charges of misdemeanor reckless conduct. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] Importantly, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as there

---

[2] See *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29(1) (733 SE2d 72) (2012) (quotation marks omitted). See *Jackson v. Virginia*, 443 U.S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury have found the essential elements of the crime beyond a reasonable doubt).

is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4]

As previously noted, Landy was convicted of misdemeanor reckless conduct, which is codified in OCGA § 16-5-60(b)(2), and provides that:

> A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

And this Court has held that the only thing OCGA § 16-5-60(b) requires, "by its plain terms, is proof that a person consciously disregarded a substantial and unjustifiable risk that his act would harm another person or endanger the other person's safety."[5]

On appeal, Landy argues that without the prior-acts evidence she claims was improperly admitted, the State failed to present sufficient evidence to prove her guilt. We address below Landy's incorrect contention that the prior-acts evidence was

---

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (quotation marks omitted).

[5] *In the Interest of A. A.*, 362 Ga. App. 426, 429(1) (868 SE2d 812) (2022) (punctuation omitted).

improperly admitted; but even so, her argument does not affect our assessment of the sufficiency of the evidence. Indeed, when we consider the legal sufficiency of the evidence "under *Jackson v. Virginia*,[6] we consider all the evidence presented at trial, without regard to whether some of that evidence might have been improperly admitted."[7] In this case, the accusation charged Landy with reckless conduct by alleging she

> did cause bodily harm to [the victim], by consciously disregarding a substantial and unjustifiable risk that her act or omission, to wit: failing to properly confine her [dog] as required by Fulton County Code of Ordinances, Chapter 34, Article VI 34-205(b), would cause harm to such person by allowing [the dog] the opportunity to attack . . . and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise[.]

And here, the evidence showed that Landy's two Rottweilers escaped from her yard through gaps in her fencing and viciously attacked two young boys and the two adults who intervened to help them, causing bodily injuries to all four. Given these

---

[6] See supra note 3 & accompanying text.

[7] *Golden v. State*, 310 Ga. 538, 540(1) (852 SE2d 524) (2020) (quotation marks omitted). Accord *Virger v. State*, 305 Ga. 281, 286(2) n.3 (824 SE2d 346) (2019).

circumstances, the evidence was sufficient to support Landy's convictions on the charges of reckless conduct.[8]

2. Landy also contends the trial court erred in denying her motion for a directed verdict based on an alleged fatal variance between the allegations related to reckless conduct in the accusation and the evidence at trial. Again, we disagree.

This Court reviews the denial of a motion for directed verdict of acquittal "under the same standard as that for determining the sufficiency of the evidence to support a conviction."[9] We must determine, then, whether the evidence presented at trial, "when viewed in the light most favorable to the verdict[ ], was sufficient to authorize a rational jury to find the appellant guilty beyond a reasonable doubt of the

---

[8] See *Turnipseed v. State*, 186 Ga. App. 278, 279–80(2) (367 SE2d 259) (1988) (physical precedent only) (holding evidence was sufficient to show defendant engaged in reckless conduct by keeping pitbull terriers and failing to adequately secure them, resulting in the dogs killing a child). See also *Miller v. State*, 179 Ga. App. 217, 217–18(1) (345 SE2d 909) (1986) (ruling evidence defendant allowed his dogs to roam freely, despite knowledge of previous attacks, resulting in dogs killing a tenant's dog was sufficient to support conviction on charge of misdemeanor cruelty to animals).

[9] *Gille v. State*, 351 Ga. App. 875, 875(1) (833 SE2d 573) (2019) (punctuation omitted). Accord *Luy v. State*, 303 Ga. App. 613, 613 (694 SE2d 370) (2010).

crime[ ] of which he was convicted."[10] And applying that standard here, the trial court did not err in denying the motion for directed verdict.

Landy argues the State failed to prove that the Fulton County ordinance—which the accusation alleges she violated by not properly confining her dogs—applied to her because she resided in the City of Alpharetta rather than unincorporated Fulton County. That ordinance, the Fulton County Code of Ordinances, Chapter 34 Article VI § 34-205 (as included in Landy's Requests to Charge and which was admitted as an exhibit at trial) provided:

> Within the unincorporated area of Fulton County or within any municipality in Fulton County which has or may enter into an agreement with Fulton County for animal control services, the running at large of dogs is prohibited and dogs must be confined to the premises of the owner or other person having custody and control of the dog and shall be restrained by means of a fence or wall or other enclosure, or restrained individually by leash under the control of a competent person. An electronic confinement system shall be considered an acceptable enclosure when the equipment is properly maintained and in continuous working order, and the animal to be contained within wear the appropriate electronic collar when within the system parameters.

---

[10] *Gille*, 351 Ga. App. at 875(1) (punctuation omitted).

And after the State rested, Landy moved for a directed verdict, arguing the State failed to show that the City of Alpharetta—where Landy resided and the incident occurred—entered into an agreement with Fulton County for animal-control services. In response, the State argued that a *Fulton County* Animal Services Officer being dispatched to the scene was (at the very least) circumstantial evidence that the City had entered into an agreement with the County as contemplated by the ordinance.[11] But setting that aside, the trial court denied Landy's motion, finding the ordinance was not a material element of the reckless-conduct charges. We agree.

Indeed, not all differences between an indictment and proof "constitute fatal variances."[12] As explained by the Supreme Court of Georgia, our courts "no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality."[13] The true inquiry, then, is not "whether there has been a variance in

---

[11] See *Faust v. State*, 303 Ga. 731, 736(2) (814 SE2d 714) (2018) (holding jury was allowed to infer that DeKalb County Officer who responded to scene was acting within the scope of his territorial jurisdiction and, thus, venue was DeKalb County).

[12] *Maxwell v. State*, 348 Ga. App. 870, 874(2) (825 SE2d 420) (2019) (quotation marks omitted).

[13] *Roscoe v. State*, 288 Ga. 775, 776(3) (707 SE2d 90) (2011) (punctuation omitted). Accord *Delacruz v. State*, 280 Ga. 392, 396(3) (627 SE2d 579) (2006).

proof, but whether there has been such a variance as to affect the substantial rights of the accused."[14] Moreover, it is the underlying reasons for the rule "which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense."[15] And only if the allegations "fail to meet these tests is the variance fatal."[16]

Here, the allegations in the accusation informed Landy of the scope of the reckless-conduct charges against her, particularly that she failed to adequately confine her dangerous dogs such that four people suffered bodily harm. As a result, she was able to present defenses to these charges and was not surprised. The allegations were also sufficient to protect her against another prosecution for the same offense. Given

---

[14] *Roscoe*, 288 Ga. at 776(3) (punctuation omitted). Accord *Delacruz*, 280 Ga. at 396(3).

[15] *Roscoe*, 288 Ga. at 776(3) (punctuation omitted). Accord *Delacruz*, 280 Ga. at 396(3).

[16] *Roscoe*, 288 Ga. at 776(3) (punctuation omitted).

these circumstances, there was no fatal variance between the allegations in the accusation and the evidence introduced at trial.[17]

3. Next, Landy contends the trial court erred in admitting Fields's testimony as evidence of prior acts under OCGA § 24-4-404(b) and OCGA § 24-4-403. Yet again, we disagree.

Turning to the relevant statutes, OCGA § 24-4-404(b) ("Rule 404(b)") provides, among other things, that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident.[18]

---

[17] See *Awui v. State*, 375 Ga. App. 79, 81–82(1) (914 SE2d 648) (2025) (holding there was no fatal variance when indictment charging defendant with fleeing a police officer alleged defendant ignored officer's audible and visual orders to stop but evidence showed only that officer gave a visual signal as manner in which officer gave order was not material); *Moon v. State*, 335 Ga. App. 642, 647(2) (782 SE2d 699) (2016) (explaining there was no fatal variance when indictment charged defendant with possession of pornographic photographs but evidence showed he possessed digital images); *Leonard v. State*, 326 Ga. App. 209, 211 (756 SE2d 293) (2014) (determining no fatal variance when indictment charged that defendant stole a cell phone but the evidence showed he stole a tablet).

[18] (Emphasis added ).

But evidence that is offered for a proper purpose under Rule 404(b) may still be excluded under OCGA § 24-4-403 ("Rule 403") if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[19] And to properly weigh the considerations of these two evidentiary rules and evaluate the admissibility of so-called "other acts" evidence,[20] the Supreme Court of Georgia has adopted a three-part test: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the

---

[19] OCGA § 24-4-403. Accord *Morris v. State*, 340 Ga. App. 295, 306(4) (797 SE2d 207) (2017) (punctuation omitted).

[20] See *Olds v. State*, 299 Ga. 65, 69(2) (786 SE2d 633) (2016) ("Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. Rule 404 (b) is one such provision, and so, when we have considered the meaning of Rule 404 (b), we consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b)." (citations omitted)); *State v. Jones*, 297 Ga. 156, 158(1) (773 SE2d 170) (2015) (noting that Georgia courts have adopted the three-part test used by the Eleventh Circuit in evaluating other-acts evidence under the Federal Rules of Evidence, upon which Georgia's new Evidence Code is modeled). See also Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 137 (6th ed. 2018) (noting that "[t]he adoption of OCGA § 24-4-404(b) provides Georgia with a statutory framework for the admission of other acts evidence for non-character purposes").

probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[21] Lastly, we review a trial court's decision "to admit evidence of other crimes for a clear abuse of discretion."[22]

Here, Landy argues that Fields's testimony claiming he was attacked by her two dogs while doing work *within* her property bore no resemblance to the reckless-conduct charges alleging that she failed to adequately confine her dogs and prevent them from escaping *outside* her property. So, in her view, the evidence was improperly introduced solely to shed a poor light on her character and its probative value was far outweighed by the prejudice she suffered. She also argues the trial court overlooked whether, under Rule 403, the probative value of this evidence was far outweighed by its prejudicial effect.

In addressing Landy's argument under Rule 404(b) that the incident involving her dogs' attack on Fields was distinguishable from the incident forming the basis for

---

[21] *Bradshaw v. State*, 296 Ga. 650, 656(3) (769 SE2d 892) (2015) (punctuation omitted). Accord *Morris*, 340 Ga. App. at 306(4).

[22] *Jernigan v. State*, 357 Ga. App. 415, 420–21(2) (848 SE2d 707) (2020) (punctuation omitted).

the reckless-conduct charges, we note there is "no requirement that the prior crime or transaction be absolutely identical in every respect."[23] Indeed, when considering the admissibility of similar-transaction evidence, the "proper focus is on the similarities, not the differences, between the separate crime and the crime in question."[24] And contrary to Landy's assertion that this prior act was not relevant, the State introduced Fields's testimony to show that Landy was well aware her two dogs posed a danger to others. So, her failure to properly confine them (as the accusation noted) constituted an unjustifiable risk that such an omission would cause harm to other persons. Fields's testimony about the incident in which Landy's dogs attacked him while he was working on her property, then, was similar enough to be admissible under Rule 404(b).[25]

---

[23] *Curry v. State*, 330 Ga. App. 610, 615(1) (768 SE2d 791) (2015) (quotation marks omitted). Accord *Cross v. State*, 354 Ga. App. 355, 363(2)(b) (839 SE2d 265) (2020).

[24] *Curry*, 330 Ga. App. at 615–16(1) (quotation marks omitted). Accord *Cross*, 354 Ga. App. at 363(2)(b).

[25] See *Brewton v. State*, 370 Ga. App. 224, 227–28(2) (896 SE2d 133) (2023) (holding prior-acts evidence of defendant's penchant for discharging firearms during perceived or actual disputes was admissible under Rule 404(b) to show intent and lack of mistake in aggravated assault and reckless conduct case); *Miller*, 179 Ga. App. at 219(3) (concluding under former evidence code that similar evidence that defendant's

As for Landy's argument that the trial court failed to conduct the balancing test under Rule 403 when it admitted this evidence, our Supreme Court has explained that "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence."[26] And absent some express showing that the trial court "did not understand its obligation to conduct the balancing test, we will not read such error into the trial court's ruling."[27] Also significantly, there is no requirement that the court "explicitly analyze the balancing test on the record."[28] In any event, Landy's argument that the trial court ignored whether the probative value of this evidence was far outweighed by its prejudicial effect is belied by the record. In fact, in ruling that Fields's testimony was admissible under Rule 404(b), the trial court explicitly noted that "the probative value of [the

___

dogs had killed dog and calf and severely mauled another calf was admissible in prosecution for cruelty to animals to show defendant's prior knowledge of vicious nature of dogs).

[26] *State v. Atkins*, 304 Ga. 413, 423(2)(c) (819 SE2d 28) (2018) (quotation marks omitted). Accord *Cross*, 354 Ga. App. at 363(2)(b).

[27] *Williams v. State*, 366 Ga. App. 114, 123(1) (881 SE2d 1) (2022) (quotation marks omitted). Accord *Webb v. State*, 359 Ga. App. 453, 459–60(2) (858 SE2d 546) (2021).

[28] *Williams*, 366 Ga. App. at 123(1) (quotation marks omitted). Accord *Wilkerson v. State*, 356 Ga. App. 831, 833(1) (849 SE2d 677) (2020).

evidence], which is knowledge that the dogs could bite and in a dangerous condition . . . is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. So [Rule] 403 would not exclude that evidence." As a result, Landy's contention the trial court erred in this regard lacks merit.[29]

4. Landy next contends the trial court erred in admitting the testimony of Figueiredo and Merriam under Rule 404(b) because the State failed to provide the required pre-trial notice. Once again, we disagree.

Relevant to Landy's contention, OCGA § 24-4-404(b) in part provides:

> The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such

---

[29] See *Albury v. State*, 314 Ga. 459, 461–62(3) (877 SE2d 548) (2022) (concluding that the trial court "implicitly conducted the proper analysis under Rule 403, even though it did not expressly reference that rule," when the transcript showed that the parties and the court discussed the rule's application to the evidence); *Williams*, 366 Ga. App. at 123(1) (holding that trial court's reference to the "balancing test as well as Rule 403" during the hearing to determine whether to admit prior acts evidence implicitly indicated the court conducted Rule 403's balancing test); *Entwisle v. State*, 340 Ga. App. 122, 131(2) (796 SE2d 743) (2017) (explaining when trial court did not make specific findings regarding whether the probative value of the prior crimes was outweighed by its prejudicial impact, but explicitly referenced the balancing test and noted that "the evidence must satisfy Rule 403," the trial court, thus, applied the balancing test and implicitly found that the evidence was admissible pursuant to this test (quotation marks omitted)).

evidence it intends to introduce at trial. *Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.*[30]

And noting the plain text of the last sentence in the statute, the Supreme Court of Georgia has clarified that "[n]otice is not required . . . when other acts evidence is introduced as intrinsic evidence, as evidence of motive, or as evidence of prior difficulties between the accused and the alleged victim."[31]

Here, on the first day of trial but before jury selection, Landy moved to exclude Figueiredo and Merriam from testifying about previous occasions on which her two dogs escaped, arguing that such evidence amounted to prior-acts evidence for which the State failed to provide notice. The State acknowledged it did not provide notice under Rule 404(b)—as it had for Fields—but it argued that such notice was not required because the prior escapes were "intrinsically intertwined" with the facts of the case.[32] Essentially agreeing with the State, the trial court noted that on the

---

[30] (Emphasis added).

[31] *Williams v. State*, 302 Ga. 474, 484(IV)(d) n.3 (807 SE2d 350) (2017).

[32] See id (explaining notice is not required under Rule 404(b) if the evidence sought to be introduced is intrinsic to the charged offense).

previous occasions on which Landy's dogs escaped, Figueiredo and Merriam brought them back to Landy's property; and given that Merriam was both a witness and a victim in the case, the evidence was admissible as either circumstances immediately surrounding the charged crimes or prior difficulties.

Landy argues the trial court's ruling amounted to error, but this contention is a nonstarter. Figueiredo and Merriam's testimony about the dogs' escape and their collective effort to shepherd them back to Landy's property only a short time before their ultimate escape and attack upon F. G. and R. G. was intrinsic evidence bearing directly on the charged conduct and not subject to Rule 404(b) notice.[33] And their testimony about similarly retrieving Landy's escaped dogs on one or two occasions before the date of the charged incident could be characterized as prior difficulties, demonstrating how Merriam had previously borne the brunt of Landy's disregard in

---

[33] See *Collum v. State*, 376 Ga. App. 376, 382(1)(d) (918 SE2d 171) (2025) ("[E]vidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." (quotation marks omitted)).

ensuring her dogs remained confined to her property.[34] Moreover, although the State did not file notice of this evidence under Rule 404(b), both Figueiredo and Merriam were disclosed on the State's witness list, and so Landy could hardly claim to have been surprised that the State would seek to have them testify.[35] In any event, the trial court did not abuse its discretion in admitting this testimony into evidence.

5. Landy also contends the trial court erred in qualifying the Fulton County Animal Services Officer as an expert witness on various aspects of canine behavior. Yet again, we disagree.

This case was tried on October 5 through October 7, 2022, and effective July 1, 2022, the General Assembly repealed OCGA § 24-7-707 and amended OCGA § 24-7-702 such that the latter statute now governs the admissibility of expert testimony in

---

[34] See *Flowers v. State*, 307 Ga. 618, 622(2) (837 SE2d 824) (2020) (holding that evidence of prior difficulty between defendant and murder victim was relevant to clarify the nature of the parties' relationship, and, thus, was admissible); *Sherrod v. State*, 355 Ga. App. 441, 447(2) (844 SE2d 508) (2020) (concluding evidence of prior difficulty between defendant and victim in aggravated assault and reckless conduct case was admissible to show relationship between parties).

[35] See *Mitchell v. State*, 378 Ga. App. 441, 445–46(2) (926 SE2d 145) (2026) (holding trial court did not err in allowing two witnesses to testify when they were not on State's witness list given that names of both witnesses were provided during discovery and defendant made no claim of surprise).

criminal as well as civil cases.[36] That amended version of OCGA § 24-7-702(b) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based upon sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.

With this amendment, the General Assembly extended "to criminal cases the federal standard of admissibility of expert testimony articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[37] and its progeny."[38] Under this standard,

---

[36] See 2022 Ga. L., p. 201, § 1 (amending OCGA § 24-7-702 to apply "in all proceedings" rather than only "in all civil proceedings" and repealing OCGA § 24-7-707). See also OCGA § 24-7-702(a) ("Except as provided in Code Section 22-1-14 and in subsection (g) of this Code section, the provisions of this Code section shall apply in *all* proceedings. The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses." (emphasis added)).

[37] 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

[38] *Smith v. State*, 315 Ga. 287, 300(2)(b) n.6 (882 SE2d 300) (2022) (punctuation omitted). Accord *Rijal v. State*, 367 Ga. App. 703, 713(3)(b)(ii) n.58 (888 SE2d 272) (2023).

a trial court must evaluate the reliability of the expert's proffered testimony; proper considerations include whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.[39]

And a trial court has broad discretion when "accepting or rejecting the qualifications of an expert witness, and we review a trial court's ruling on both the qualification of an expert and the admissibility of that expert's testimony for an abuse of discretion."[40]

On appeal, Landy argues the trial court erred in qualifying Fulton County Animal Services Officer Johnson as an expert witness under Rule 702(b), asserting that she was unqualified to opine on topics such as canine behavior and canine-owner responsibility. But other than simply citing OCGA § 24-7-702(b), her argument that Officer Johnson was unqualified to testify as an expert consists of conclusory

[39] *Smith*, 315 Ga. at 300(2)(b) n.6 (punctuation omitted). Accord *Rijal*, 367 Ga. App. at 713(3)(b)(ii) n.58.

[40] *Garland v. State*, 361 Ga. App. 724, 732(2) (865 SE2d 724) (2021) (punctuation omitted). See also generally *Flannigan v. State*, 305 Ga. 57, 60(2)(a) (823 SE2d 743) (2019); *Hambrick v. State*, 353 Ga. App. 666, 675(3) (839 SE2d 664) (2020).

statements without support. And as this Court has repeatedly explained, an appellant "abandons a claim of error when he provides only citations to the most basic legal authority but no Georgia law to support his specific claim of error."[41] Indeed, mere conclusory statements are "not the type of meaningful argument contemplated by our rules."[42] So, by failing to make any meaningful legal argument or provide record citations to support this claim of error, Landy arguably abandoned her contention in this regard.[43]

But regardless of Landy's abandonment of this argument, we disagree the trial court erred. Here, before testifying about her involvement in being dispatched to the scene of the attack and confiscating Landy's dogs, Officer Johnson testified about her education, training, and experience as an Animal Control Officer in Fulton County and in Chattanooga, Tennessee, and that she worked with animals in several capacities for over 17 years. Significantly, much of her experience entailed impounding

---

[41] *Finnegan v. State*, 371 Ga. App. 756, 759(1) (903 SE2d 141) (2024) (emphasis omitted).

[42] Id. (quotation marks omitted).

[43] See id. at 758–59(1) (explaining defendant had abandoned his ineffective assistance of counsel claim "by failing to make any meaningful legal argument or provide record citations to support" the claim).

dangerous animals, as well as documenting incidents of animal bites on humans and instances of animal cruelty. In fact, Johnson had taken courses for certifications in investigating animal cruelty and animal behavior. Additionally, she testified that over the course of her career, she worked in situations involving aggressive dogs hundreds of times. Later on, following an objection by Landy that Johnson had not shown she was qualified to testify about the behavior of different breeds of canines, she also testified during further voir dire about her certification from the National Animal Care and Control Association. Specifically, Johnson noted that she had specialized training in the behavior of various canine breeds, and that she employed this knowledge frequently, evaluating aggressive canine behavior as an Animal Control Officer.

In light of this record, the trial court did not abuse its broad discretion in qualifying Officer Johnson as an expert. As we have explained, a trial court "may not exclude an otherwise sufficient expert opinion simply because it believes that the opinion is not—in its view—particularly strong or persuasive."[44] Instead, the weight

---

[44] *Ramirez v. State*, 376 Ga. App. 775, 781(2) (921 SE2d 36) (2025) (punctuation omitted). Accord *Wright v. State*, 374 Ga. App. 28, 31–32 (910 SE2d 839) (2024).

to be given to admissible expert testimony is "a matter for the jury."[45] Crucially, courts must remain "cautious not to improperly use the admissibility criteria to supplant the sacrosanct right to a jury trial because vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[46] So, Landy's contention in this regard lacks merit.[47]

6. Landy next contends the trial court erred by imposing an unlawful sentence. This argument is a nonstarter.

---

[45] *Ramirez*, 376 Ga. App. at 781(2) (punctuation omitted). Accord *Wright*, 374 Ga. App. at 32.

[46] *Ramirez*, 376 Ga. App. at 781(2) (punctuation omitted). Accord *Wright*, 374 Ga. App. at 32.

[47] See *Ramirez*, 376 Ga. App. at 780–81(2) (holding trial court did not abuse its discretion by allowing officer to testify as expert with respect to data retrieved from event data recorder ("EDR") in defendant's vehicle, as officer explained his qualifications to present data, testifying that he had specific training and experience in methods of accident reconstruction and retrieving EDR data); *Wilson v. State*, 370 Ga. App. 399, 407–08(2) (897 SE2d 597) (2024) (concluding trial court did not err in qualifying forensic sexual assault nurse examiner as expert witness given nurse examiner's testimony during State's voir dire provided trial court with sufficient information to consider whether she could testify as such).

Under Georgia law, a sentence is void if "the court imposes punishment that the law does not allow."[48] But a sentence that falls within the prescribed statutory limits is "legally authorized and is not subject to review by this Court."[49] And here, Landy argues that because the accusation charging her with reckless conduct alleged that she failed to confine her dogs under Fulton County Code § 34-205, she should have been sentenced in accordance with OCGA § 36-1-20(b), which addresses punishment for violations of local ordinances and provides that "[e]ach such ordinance shall specify the maximum punishment which may be imposed for a violation of the ordinance; and in no case shall the maximum punishment for the violation of any such ordinance exceed a fine of $1,000.00 or imprisonment for 60 days or both ...."

Even so, the obvious flaw in Landy's argument is that she was not convicted of violating the Fulton County ordinance. Instead, the jury found her guilty on eight counts of reckless conduct—a state-law offense. And then the trial court sentenced

---

[48] *Few v. State*, 311 Ga. App. 608, 608 (716 SE2d 644) (2011) (quotation marks omitted). Accord *Spargo v. State*, 332 Ga. App. 410, 411 (773 SE2d 35) (2015).

[49] *Few*, 311 Ga. App. at 608. Accord *Wilder v. State*, 343 Ga. App. 110, 112 (806 SE2d 200) (2017).

Landy to one year in incarceration, followed by three years of house arrest and four years of probation for those eight counts. In that regard, under OCGA § 16-5-60(b)(2), a person convicted on charges of reckless conduct "is guilty of a misdemeanor[.]" And OCGA § 17-10-3(a)(1) provides:

> [e]xcept as otherwise provided by law, every crime declared to be a misdemeanor shall be punished as follows: By a fine not to exceed $1,000.00 or by confinement in the county or other jail, county correctional institution, or such other places as counties may provide for maintenance of county inmates, for a total term not to exceed 12 months, or both[.]

Additionally, subsection (b) of the statute, in part, provides that "[m]isdemeanor punishment imposed under either paragraph may be subject to suspension or probation." Thus, Landy's sentence falls within the applicable statutory range of sentencing under OCGA § 17-10-3. As a result, her sentence is legally authorized and we need not review it.[50]

---

[50] See *Munye v. State*, 342 Ga. App. 680, 686(1)(b) (803 SE2d 775) (2017) (explaining that defendant's claim the sentences imposed on him should have been restricted to the more limited punishments available for county ordinance violations in the DeKalb County Code of Ordinances lacked merit because defendant was prosecuted and convicted on state law traffic misdemeanors, not county ordinances). See also *Jones v. State*, 308 Ga. App. 99, 100–01(1) (706 SE2d 593) (2011) (holding misdemeanor punishment statute applied to defendant's speeding conviction and,

7. Landy also maintains the trial court erred in denying her motion to recuse the trial judge based on his alleged bias in favor of the State. Yet again, we disagree.

We review a trial court's denial of a motion to recuse for an "abuse of discretion."[51] And our analysis begins with Rule 25.3 of the Uniform Superior Court Rules, which provides:

> When a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse. The allegations of the motion shall stand denied automatically. The trial judge shall not otherwise oppose the motion. In reviewing a motion to recuse,

thus, 12-month sentence was authorized); *Brison v. State*, 248 Ga. App. 168, 170(5) (545 SE2d 345) (2001) (concluding defendant's consecutive 12-month sentences for several misdemeanor charges of shoplifting and simple battery were authorized by OCGA § 17-10-3, which applies to misdemeanor convictions); *Wilson v. State*, 167 Ga. App. 421, 422 (306 SE2d 704) (1983) ("The sentence imposed for misdemeanors is within the discretion of the trial judge, so long as it is within the maximum limits of authorized punishment" under OCGA § 17-10-3(b).).

[51] *Serdula v. State*, 356 Ga. App. 94, 97(1) (845 SE2d 362) (2020).

the judge shall be guided by Rule 2.11 of the Georgia Code of Judicial Conduct.[52]

Importantly, if all three criteria are met, "another judge shall be assigned to hear the motion to recuse."[53] Of course, whether the three threshold criteria have been satisfied is "a question of law, which an appellate court reviews de novo."[54]

Also relevant to our analysis is former Canon 3 (E)(1)(a) and current Rule 2.11 of the Georgia Code of Judicial Conduct, which both provide that "[j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably

---

[52] See *Post v. State*, 298 Ga. 241, 243(1) (779 SE2d 624) (2015) (holding that, under Uniform Superior Court Rule 25.3, "when the trial judge assigned to a case is presented with a recusal motion and an accompanying affidavit, the judge shall temporarily cease to act upon the merits of the matter and determine immediately: (1) whether the motion is timely; (2) whether the affidavit is legally sufficient; and (3) whether the affidavit sets forth facts that, if proved, would warrant the assigned judge's recusal from the case"); *Henderson v. State*, 295 Ga. 333, 334(1) (759 SE2d 827) (2014) ("Once a motion to recuse is filed with the trial judge whose recusal is sought, that judge must make three threshold determinations regarding the legal sufficiency of the motion: whether it was timely filed; whether the affidavit made in support of it is legally sufficient; and whether, if some or all of the facts set forth in the affidavit are true, recusal would be authorized." (citation omitted)).

[53] *Serdula*, 356 Ga. App. at 98(1) (quotation marks omitted). Accord *Post*, 298 Ga. at 243(1).

[54] *Serdula*, 356 Ga. App. at 98(1) (quotation marks omitted). Accord *Post*, 298 Ga. at 243(1).

be questioned," including but not limited to instances in which "the judge has a personal bias or prejudice concerning a party or a party's lawyer ...."[55] As to this judicial canon and rule language, we have also held that "'[i]mpartiality might reasonably be questioned' means a reasonable perception, of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates ...."[56] Moreover, recusal on this ground "requires a rational basis for such questioning, not an arbitrary basis, even though no actual impropriety on the part of the trial court judge has been shown."[57]

Here, before trial, the parties met in the trial judge's chambers to discuss various pre-trial issues, including the accusation and possible sentencing. At the time of the meeting (which was not transcribed), the accusation had not yet been amended

---

[55] Georgia Code of Judicial Conduct Rule 2.11 & former Georgia Code of Judicial Conduct Canon 3(E)(1)(a). The Georgia Code of Judicial Conduct replaced the Georgia Code of Judicial Conduct Canon on January 1, 2016. See *Post*, 298 Ga. at 244(1) n.4.

[56] *Serdula*, 356 Ga. App. at 98(1). Accord *Lemming v. State*, 292 Ga. App. 138, 141(1) (663 SE2d 375) (2008).

[57] *Serdula*, 356 Ga. App. at 98(1) (quotation marks omitted). Accord *Eastside Baptist Church v. Vicinanza*, 269 Ga. App. 239, 241 (603 SE2d 681) (2004).

to include the eight reckless-conduct charges but still only included the original four counts on that charge. Landy's trial counsel and the State's prosecutor began discussing whether the reckless-conduct charges would merge if Landy was found guilty, because all counts alleged the attacks were perpetrated by the two dogs together. At that point, according to Landy's trial counsel's recollection, the trial judge mentioned "re-accusing the case" to avoid the potential merger issue.

The next day, the State amended the accusation to separate out the reckless-conduct charges such that each dog's attack on each victim constituted a separate count, with the result being eight counts of reckless conduct rather than only four. Landy's trial counsel then moved to recuse the trial judge, arguing the judge had shown bias in favor of the State by suggesting a means by which the State could avoid merger, potentially subjecting Landy to additional punishment.

In compliance with Uniform Superior Court Rules 25.3[58] and 25.4,[59] Landy's motion to recuse was assigned to a different judge, who conducted a hearing on the matter. During the hearing, Landy's counsel recounted his recollection of this

---

[58] See supra note 51 & accompanying text.

[59] See Uniform Superior Court Rule 25.4 (outlining the procedures upon a motion for disqualification).

conversation, but the State's prosecutor countered that, before the in-chambers conference, the trial judge was unfamiliar with the facts of the case, had not even reviewed the original accusation, stated he did not know the answer at that point to the parties' argument about merger, and merely noted that his answer could change if the State amended the accusation. The State's prosecutor also noted the State had the option to amend the accusation at any point before trial.[60] At the conclusion of the hearing, the trial judge assigned to hear the motion denied it. And the next day, that judge issued an order affirming its denial of Landy's motion based on its finding that a "reasonable, disinterested person would not believe that the judge was acting partially when he brought up the issue of re-accusing."

As noted above, Landy argues the trial judge assigned to rule on her motion to recuse erred in concluding the original judge's comments about the accusation did not demonstrate bias in favor of the State. But we disagree. As the Supreme Court of

---

[60] See OCGA § 17-7-71(f) ("Prior to trial, the prosecuting attorney may amend the accusation, summons, or any citation to allege or to change the allegations regarding any offense arising out of the same conduct of the defendant which gave rise to any offense alleged or attempted to be alleged in the original accusation, summons, or citation."); *Barghi v. State*, 334 Ga. App. 409, 412(2) (779 SE2d 373) (2015) (explaining that under OCGA § 17-7-71(f), the prosecution may amend an accusation at any time before trial).

Georgia has held, "[a] trial judge generally ought not give advice to a lawyer about trial strategy in a case in which the judge is presiding."[61] And at least in some circumstances, the giving of such advice could "create an appearance of partiality, which is a proper ground for a motion to recuse under our Code of Judicial Conduct."[62] Even so, the law "presumes honesty and integrity on the part of those serving as adjudicators, and [Landy] has failed to overcome the presumption in this case."[63]

Indeed, here, the alleged advocacy occurred not secretly in an *ex parte* communication, but in a meeting involving *both* the State's prosecutor and Landy's trial counsel. Nor was the meeting transcribed. As a result, the record does not disclose exactly what was said or the context in which it was said, which makes it difficult, if not impossible, to characterize the trial judge's comment about the

---

[61] *Pyatt v. State*, 298 Ga. 742, 751(5) (784 SE2d 759) (2016). Accord *Cromer v. State*, 348 Ga. App. 113, 117(2) (820 SE2d 269) (2018).

[62] *Pyatt*, 298 Ga. at 751(5). Accord *Cromer*, 348 Ga. App. at 117(2).

[63] *Pyatt*, 298 Ga. at 752–53(5) (citation and quotation marks omitted). Accord *Jackson v. State*, 315 Ga. 543, 555(2) (883 SE2d 815) (2023).

accusation as advocating that the State adopt a particular trial strategy.[64] And at such

an early stage, with the trial court being unfamiliar with the details of the accusation

(as both parties acknowledged), the comment could just as easily be characterized as

the trial judge seeking to ensure a clear presentation of the case.[65] As a result, the trial

judge assigned to hear Landy's recusal motion did not abuse his discretion in denying

it.[66]

8. Finally, Landy contends the trial court erred in denying her claim that trial

counsel rendered ineffective assistance. Once again, we disagree.

To evaluate Landy's claims of ineffective assistance of counsel, we apply the

familiar two-pronged test established by the Supreme Court of the United States in

---

[64] Cf. *Pyatt*, 298 Ga. at 750–51(5) (holding that trial judge's alleged coaching of prosecutor as to trial strategy in felony murder trial, by suggesting that prosecution would be better off arguing that defendant was party to murder, rather than principal, did not demonstrate actual bias in favor of prosecution).

[65] See id. at 752(5) n.12 (explaining that "although a trial judge ordinarily ought not 'coach' a lawyer on trial strategy, a trial judge is legitimately concerned in promoting an efficient and clear presentation of the case to the jury").

[66] See *Hadfield v. State*, 201 Ga. App. 609, 611(2) (411 SE2d 580) (1991) (holding trial judge's disclosure during pretrial conference that he intended to impose lengthy sentence in event State proved its factual allegations was not expression of bias or prejudice against defendant requiring trial judge's recusal).

*Strickland v. Washington*,[67] which requires her to show that trial counsel's

performance was "deficient and that the deficient performance so prejudiced [her]

that there is a reasonable likelihood that, but for counsel's errors, the outcome of the

trial would have been different."[68] Importantly, should a defendant "fail to meet his

burden on one prong of this two-prong test, we need not review the other prong."[69]

Also, there is a strong presumption that trial counsel's conduct falls within the broad

range of reasonable professional conduct, and a criminal defendant must overcome

this presumption.[70] The reasonableness of counsel's conduct is "examined from

counsel's perspective at the time of trial and under the particular circumstances of the

case[.]"[71] And decisions about trial tactics and strategy may form the basis for an

---

[67] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[68] *Chapman v. State*, 273 Ga. 348, 349–50(2) (541 SE2d 634) (2001). See *Strickland*, 466 U.S. at 687(III).

[69] *McAllister v. State*, 351 Ga. App. 76, 93(6) (830 SE2d 443) (2019). Accord *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[70] *Chapman*, 273 Ga. at 350(2). See *Cammer v. Walker*, 290 Ga. 251, 255(1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[71] *Lockhart v. State*, 298 Ga. 384, 385(2) (782 SE2d 245) (2016).

ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[72] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[73]

In her amended motion for new trial, Landy argued that her trial counsel rendered ineffective assistance by failing to introduce exculpatory evidence at trial. More precisely, Landy claimed that trial counsel failed to call unnamed witnesses, who would have testified that Landy's dogs usually wore shock collars; representatives of the company who sold an invisible fence Landy used; and a tenant on Landy's property who would have testified that the dogs were in an interior fence when she left, approximately an hour before the attack on the two boys. Landy makes essentially the same argument on appeal. But none of these witnesses testified during the hearing

---

[72] Id.

[73] *Sowell v. State*, 327 Ga. App. 532, 539(4) (759 SE2d 602) (2014). See *Grant v. State*, 295 Ga. 126, 130(5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

on her motion for new trial. Instead, appellate counsel referred to an affidavit attached to the amended motion from an attorney who had represented Landy in several civil matters, in which he claimed to have provided Landy's trial counsel with the above evidence. And based on the averments in the affidavit, Landy argues the witnesses would have demonstrated that she made attempts to confine her dogs and was not negligent in that regard.

First, and significantly, Landy's trial counsel did not testify during the hearing. And trial counsel's decisions are "presumed to be strategic, and [Landy] must show that the presumed strategy was so unsound that no reasonable lawyer would have adopted it to show deficient performance."[74] This is an unusually heavy burden to carry, and when trial counsel does not testify, it "is extremely difficult to overcome the presumption of reasonable professional assistance."[75] Moreover, to prove the prejudice prong of *Strickland* on a claim that trial counsel failed to call a witness, a defendant "must show the witness's expected testimony by presenting either live

---

[74] *Guerra v. State*, 373 Ga. App. 774, 782(3) (908 SE2d 704) (2024) (quotation marks omitted). Accord *Butler v. State*, 292 Ga. 400, 405(3) n.8 (738 SE2d 74) (2013).

[75] *Guerra*, 373 Ga. App. at 783(3) (quotation marks omitted). Accord *Butler*, 292 Ga. at 405(3) n.8.

testimony of the witness, an affidavit from the witness, or a legally recognized substitute for the uncalled witness's testimony; a proffer by counsel is insufficient."[76] Here, the affidavit is not from a witness, but from civil counsel merely asserting what those witnesses would say. And without having made such an evidentiary showing at the hearing, Landy "cannot demonstrate prejudice on [her] claim that counsel was ineffective."[77] Given these circumstances, the trial court did not err in denying Landy's ineffective-assistance-of-counsel claim.

For all these reasons, we affirm Landy's convictions and the denial of her motion for new trial.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

[76] *Curtis v. State*, 330 Ga. App. 839, 842(1)(b) (769 SE2d 580) (2015) (quotation marks omitted).

[77] *Price v. State*, 305 Ga. 608, 614(4) (825 SE2d 178) (2019).